[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1151 
The State appeals from the trial court's order granting a motion to dismiss the indictment against the appellee, Maurice Stovall.
The State argues that the trial court erroneously granted the appellee's motion to dismiss an indictment against him for unlawful possession of a controlled substance. Specifically, it contends that the appellee did not establish that he was denied his right to a speedy trial; that the record does not indicate that the trial court considered and weighed the factors set forth in Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); and that the trial court erroneously granted the motion to dismiss without making specific findings of fact. In Barker, the United States Supreme Court set forth the following factors that must be weighed when reviewing a speedy trial claim: (1) *Page 1152 
the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) the degree of prejudice the accused suffered due to the delay. In Ex parte Walker, 928 So.2d 259 (Ala. 2005), the Alabama Supreme Court provided guidance as to the proper application of those factors.
The record before this court is sparse and does not include all of the dates and information relevant to the appellee's speedy trial claim. Also, although the trial court conducted a hearing on the appellee's motion to dismiss on August 1, 2005, the record does not appear to include a transcript of the entire hearing. Rather, it appears that the transcript begins in the middle of the hearing. Further, the portion of the hearing that is included in the record is confusing, includes only vague assertions by the people present at the hearing, and does not include evidence about each of the Barker factors. Finally, the trial court did not make any findings regarding each of the factors set forth in Barker.
Because the relevant dates and events in this case are not clear from the meager record before us, we cannot properly review the propriety of the trial court's ruling on the appellee's motion to dismiss in light of Ex parteWalker, supra, and Barker, supra.[1] Cf. Exparte Walker, supra (noting that review was possible because the relevant dates and events were not in dispute). Accordingly, we remand this case to the trial court with instructions that that court conduct an evidentiary hearing during which it takes evidence concerning each Barker
factor.[2] Thereafter, it shall make specific, written findings of fact as to each Barker factor with reference to the principles set forth by the Alabama Supreme Court in Ex parte Walker, supra. If possible, the trial court shall also provide this court with a complete transcript of the August 1, 2005, hearing. On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 56 days after the release of this opinion. The return to remand shall include a transcript of the new evidentiary hearing; the trial court's specific, written findings of fact; and a copy of the complete transcript of the August 1, 2005, hearing, if one is available.
REMANDED WITH INSTRUCTIONS.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
 On Return to Remand
BASCHAB, Judge.
The State appealed from the trial court's order granting a motion to dismiss the indictment for unlawful possession of a controlled substance against the appellee, Maurice Stovall.
In its brief to this court, the State argued that the trial court erroneously granted the appellee's motion to dismiss an indictment against him for unlawful possession of a controlled substance. Specifically, it contended that the appellee did not establish that he was denied his right to a speedy trial; that the record did not indicate that the trial court considered and *Page 1153 
weighed the factors set forth in Barker v. Wingo,407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); and that the trial court erroneously granted the motion to dismiss without making specific findings of fact. Based on the sparse record before us on appeal, on February 3, 2006, we remanded this case to the trial court with instructions that that court conduct an evidentiary hearing to take evidence concerning eachBarker factor and that it make specific, written findings of fact as to each Barker factor with reference to the principles set forth by the Alabama Supreme Court in Ex parte Walker, 928 So.2d 259 (Ala. 2005). On April 6, 2006, the trial court submitted its return to remand.
The State argues that the trial court erroneously granted the appellee's motion to dismiss and that the trial court's findings of fact on return to remand "failed to fully encompass and balance all of the facts presented at the hearing under the four factors found in Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)." (State's brief at p. 2.) In Barker, the United States Supreme Court set forth the following factors that must be weighed when reviewing a speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) the degree of prejudice the accused suffered due to the delay. In Ex parte Walker, supra, the Alabama Supreme Court provided guidance as to the proper application of those factors.
The pertinent dates and events in this case were as follows:
March 4, 2002: The appellee was arrested.
 April 17, 2002: The appellee waived a preliminary hearing and consented to his case being bound over to the Montgomery County Grand Jury.
 April 11, 2003: The certificate of analysis was issued by the Alabama Department of Forensic Sciences.
 May 9, 2003: The appellee was indicted for unlawful possession of a controlled substance.
 April 8, 2004: An initial attempt was made to serve the indictment on the appellee at the address listed on the indictment, which was the appellee's grandmother's residence. At that time, the appellee's grandmother told officers that the appellee lived there "off and on." (R. 3.)
 May 10, 2004: A second attempt was made to serve the indictment on the appellee at his grandmother's residence. At that time, there was no answer at that residence.
 June 2, 2005: The indictment was served on the appellee after he was arrested on unrelated charges.
 July 29, 2005: The appellee filed a motion to dismiss the indictment against him based on the denial of this right to a speedy trial.
 August 1, 2005: The trial court conducted a hearing on the appellee's motion to dismiss and granted the motion.
 A. LENGTH OF THE DELAY
Unless the delay is sufficiently lengthy to be presumptively prejudicial, it is not necessary to consider the remainingBarker factors. See Barker, supra; Zumbadov. State, 615 So.2d 1223 (Ala.Crim.App. 1993). The length of the delay is measured either from the date of the formal indictment or from the date of arrest, whichever occurred first.See Nickerson v. State, 629 So.2d 60
(Ala.Crim.App. 1993). Accordingly, the length of delay in this case is measured from the date the appellee was arrested on March 4, 2002, until the date the trial court conducted the hearing on his motion to dismiss, which *Page 1154 
was approximately 41 months. This court has previously found that shorter delays than this were presumptively prejudicial and required an examination of the remaining Barker
criteria. See, e.g., Vincent v. State, 607 So.2d 1290
(Ala.Crim.App. 1992) (holding that a 31-month delay was presumptively prejudicial). Therefore, we will examine the remaining Barker factors.
 B. REASONS FOR THE DELAY
In Walker, 928 So.2d at 259, the supreme court set forth the following standard for evaluating the reasons for the delay:
 "Barker recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531. Courts assign different weight to different reasons for delay. Deliberate delay is `weighted heavily' against the State. 407 U.S. at 531. Deliberate delay includes an `attempt to delay the trial in order to hamper the defense' or `"to gain some tactical advantage over (defendants) or to harass them."' 407 U.S. at 531 n. 32 (quoting United States v. Marion, 404 U.S. 307, 325 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531; Ex parte Carrell, 565 So.2d [104,] 108 [ (Ala. 1990)]. Justified delay — which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible — is not weighted against the State. Barker, 407 U.S. at 531; Zumbado v. State, 615 So.2d 1223, 1234 (Ala.Crim.App. 1993) (`"Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker."') (quoting McCallum v. State, 407 So.2d 865, 868 (Ala.Crim.App. 1981))."
With regard to the reasons for the delay, the trial court found as follows:
 "Defendant was initially arrested on March 4, 2002. There was a delay of approximately one year between his initial arrest and indictment. The delay between his arrest and indictment was a direct result of the time lapse between sending evidence to the Department of Forensic Sciences and receiving the lab results. The State of Alabama must have lab results before it presents a case to the Grand Jury. Therefore, the initial delay between his arrest and indictment was beyond the control of the State of Alabama."
(Remand C.R. 8.) With regard to the delay between the date the indictment was returned and the date the appellee was served with the indictment, the trial court found as follows:
 "Evidence in the present case shows that law enforcement officers made no attempts to serve the indictment on Defendant for a period of eleven months. During that eleven month period, Defendant was on probation with the Montgomery County Probation and Parole office and residing at his grandmother's residence. The second attempt was made on May 10, 2004. No other attempts were made and the indictment was ultimately served on Defendant when he was arrested on June 2, 2005 on unrelated charges. It was later determined that the June, 2005 arrest was a result of mistaken identity.
 "The address on the warrant jacket was Defendant's grandmother's address. Officers spoke to the grandmother and were advised that Defendant lived there `off and on.' There is no evidence that officers questioned her regarding alternate contact information or made additional efforts to locate Defendant. Further, *Page 1155 
Officer McCoy testified that his office does not, as a matter of procedure, attempt to determine if a person is on probation or incarcerated in the Department of Corrections. Further, they do not contact the local utility companies to determine if the individual in question has an account with any of these companies which might provide a current address."
(Remand C.R. 6-7.)
As the trial court found, the delay between the date the appellee was initially arrested and the date he was indicted was caused by a delay in testing by the Alabama Department of Forensic Sciences. This is a neutral reason. Neutral reasons for delay do not ordinarily require a dismissal of the case based on a violation of the right to a speedy trial. SeePierson v. State, 677 So.2d 830, 831 (Ala.Crim.App. 1996). Because the appellee has not shown that the State deliberately caused any delay, this Barker factor does not weigh in his favor.
With regard to the delay between the date the appellee was indicted and the execution of the indictment, the trial court apparently found that the State was negligent in not serving the indictment on the appellee. Even assuming that the State was negligent in this regard, "the precise weight afforded the delay and its effect on [the appellee] are dependent upon the prejudice to [the appellee] caused by the delay." State v.Wooten, [Ms. CR-04-2323, May 26, 2006] ___ So.2d ____, ____ (Ala.Crim.App. 2006).
 C. THE APPELLEE'S ASSERTION OF RIGHTS
In Walker, 928 So.2d at 265, the supreme court set forth the following guidelines for evaluating this prong of theBarker test:
 "An accused does not waive the right to a speedy trial simply by failing to assert it. Barker, 407 U.S. at 528. Even so, courts applying the Barker factors are to consider in the weighing process whether and when the accused asserts the right to a speedy trial, 407 U.S. at 528-29, and not every assertion of the right to a speedy trial is weighted equally. Compare Kelley v. State, 568 So.2d 405, 410 (Ala.Crim.App. 1990) (`Repeated requests for a speedy trial weigh heavily in favor of an accused.'), with Clancy v. State, 886 So.2d 166, 172 (Ala.Crim.App. 2003) (weighting third factor against an accused who asserted his right to a speedy trial two weeks before trial, and stating: ` "The fact that the appellant did not assert his right to a speedy trial sooner `tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date.'"') (quoting Benefield v. State, 726 So.2d 286, 291
(Ala.Crim.App. 1997), additional citations omitted), and Brown v. State, 392 So.2d 1248, 1254
(Ala.Crim.App. 1980) (no speedy-trial violation where defendant asserted his right to a speedy trial three days before trial).
 "In this case, Walker asserted her right to a speedy trial one time — less than five months after she was arrested. The Court of Criminal Appeals did not explicitly weigh this factor against the State. But the trial court found — and the State conceded — that this factor weighs against the State. We also find that this factor weighs in Walker's favor.
 "We note, however, that the record does not show whether Walker knew of the pendency of the indictment during the three years between her indictment and her arrest. Although the accused has no obligation to bring herself to trial, Barker, 407 U.S. at 527, Smith v. State, 409 So.2d 958, 962
(Ala.Crim.App. *Page 1156 
1981), in determining whether to presume prejudice under the fourth Barker factor, courts have emphasized the accused's ignorance of outstanding charges during the period from indictment until arrest. See, e.g., Doggett [v. United States], 505 U.S. [647,] 653-54 [(1992)] (holding that where there was unrebutted evidence that the accused was ignorant of the charges against him during the 8 1/2 years between his indictment and arrest, the accused was `not to be taxed for invoking his speedy trial right only after his arrest'); [Ex parte] Clopton, 656 So.2d [1243,] 1244 [(Ala. 1995)] (recognizing that before his arrest, the accused's ignorance of the indictment was `undisputed'). Accordingly, in a case involving delay caused by negligence on the part of the state, the third factor usually will weigh more heavily in the accused's favor when there is affirmative proof of the accused's ignorance of the charges against her during the delay. See Doggett, 505 U.S. at 653-54; Clapton, 656 So.2d at 1244. In Walker's case, however, there is no conclusive proof one way or the other regarding her knowledge of the charges during the delay between her indictment and her arrest. Consequently, this factor weighs in Walker's favor, but not as heavily as it would if the record affirmatively showed that she did not know of the charges during the time from her indictment until her arrest."
(Footnotes omitted.)
In this case, the appellee asserted his right to a speedy trial approximately one month after the indictment was served on him. Although he was not aware that an indictment had been returned against him, the record indicates that he was aware of the charges against him and that he had actually consented to the case being bound over to the grand jury. Further, he testified only that he thought the case had been dismissed because his probation officer did not say anything about the case. Therefore, this factor weighs in the appellee's favor, but not as heavily as if the appellee had been completely unaware of the charges pending against him during the delay.
 D. PREJUDICE TO THE APPELLEE
In Wooten, ___ So.2d at ____, we applied the prejudice guidelines set forth in Walker as follows:
 "With regard to a prejudice claim, the United States Supreme Court has recognized three types of prejudice associated with a denial of a speedy trial: `"oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.' Doggett, 505 U.S. at 654.
 "Here, there was no oppressive pre-trial incarceration. Additionally, although Wooten testified at trial, he did not present any evidence indicating that he suffered any anxiety or concern over the delay. Wooten claimed, however, that the 29-month delay caused him to suffer an impairment of his defense, by preventing him from calling witnesses to testify in his behalf. When the trial court inquired as to any proof of prejudice, Wooten testified that he `vaguely' recalled the events `that happened or allegedly happened.' When defense counsel asked him if he knew `the names, addresses or anything that if you needed those people to come and testify that you would be able to get in contact with them'; Wooten replied, `No.' On cross-examination, however, Wooten conceded that he had not tried to contact `those people' that might be needed at his trial. Additionally, he testified *Page 1157 
that `most' of the witnesses he thought he might need were `friends of [his] brother,' and he had not tried in any way to locate them.
 "Although our Supreme Court in Walker noted that `[p]retrial delay certainly may be so lengthy as to relieve the accused of demonstrating actual prejudice,' 928 So.2d at 277, that Court did not hold that a lengthy delay automatically relieved the accused of proving prejudice. In rejecting Walker's argument that a 50-month delay caused by the State's negligence in her case relieved her of the burden of establishing prejudice, the Court held that Walker had failed to prove prejudice because she had presented no evidence showing that she was unaware of the charges against her during that 50-month delay between the issuance of the indictment in her case and her arrest. Additionally, the Walker Court found that there was no indication from the record that either the State's negligence or the resulting length of the delay adversely affected the evidence so as to undermine the fairness of a trial.
 "Here, Wooten failed to prove that he was actually prejudiced by the delay. Although he contends that he was unaware of the indictment returned against him for a period of approximately 24 months, he failed to present any evidence indicating that the delay on the part of the State, be it justified or negligent, would undermine the fairness of his trial. Here, based on the authority of Ex parte Walker, supra, the trial court erred in dismissing the indictment on the basis that Wooten had been denied his right to a speedy-trial. Although the trial court found, at the conclusion of the hearing, that the State had not made `sufficient effort to try to serve that indictment on [Wooten],' Wooten failed to prove actual prejudice as a result of the delay. Again, in considering the balancing of the Barker factors, the precise weight and effect to be accorded the delay is dependant upon any prejudice suffered by Wooten."
In its order on return to remand, the trial court made the following findings regarding prejudice in this case:
 "Defendant was indicted in May, 2003 and was served with the indictment in this case in June, 2005. Defendant testified that, at the time of the offense in question, he was using illegal narcotics. Since that time, he completed drug treatment and is now clean and sober. However, Defendant testified that based on the length of time that has elapsed since his initial arrest, his memory has dimmed significantly. He testified that his attorney reviewed the facts of the case with him following his arrest in June, 2005, but he has only a vague recollection of being arrested and can offer no information regarding the accuracy of the facts as alleged by the State of Alabama. Further, he no longer associates with the same circle of friends who might be able to testify in his defense. Since he has completed drug treatment, he testified that he is now a family man, works and stays at home. Defendant testified that his ability to adequately defend himself against the present charges has diminished substantially based on the fact that his memory of events has dimmed and his access to exculpatory evidence which would acquit him of the charges is no longer readily available to him."
(Remand C.R. 8-9.)
Although the appellee testified that he had problems remembering the events surrounding the offense, he also admitted that he remembered being at the address in question on March 4, 2002; that he *Page 1158 
remembered law enforcement officers coming to that address; and that he remembered being arrested. Further, during the State's cross-examination of the appellee, the following occurred:
 "[THE PROSECUTOR:] Do you remember giving them a statement?
 "[THE APPELLEE:] Statement?
 "[THE PROSECUTOR:] If you were provided a copy of that statement, would that refresh your memory?
 "[THE APPELLEE:] Yes."
(Remand R. 14.) Finally, although the appellee made general allegations that, at the time of the hearing on return to remand, he did not associate with the same people, he did not testify that he could not remember the names of the people with whom he had previously associated or that he would not be able to contact or locate the people with whom he had previously associated.
In this case, there was a delay in indicting the appellee due to a backlog at the Alabama Department of Forensic Sciences. Also, there was a delay in serving the indictment upon the appellee caused, in part, by the fact that the appellee had changed residence and, in part, by the limited number of officers available to execute the number of indictments and warrants received by the Montgomery County Sheriff's Department. Further, although the appellee made general allegations of dimmed recollection, he also conceded that reviewing his statement to law enforcement officers would refresh his memory. Finally, although the appellee testified that he no longer associated with the same people, he did not assert that he could not remember the names of those people or that he would not be able to contact or locate those people.
For these reasons, the appellee did not establish that he was prejudiced by the delay. Also, he did not present any evidence indicating that the delay on the part of the State, be it justified or negligent, would undermine the fairness of his trial. After weighing the Barker factors, it does not appear that the appellee was denied his right to a speedy trial. Therefore, the trial court erroneously dismissed the indictment against him. Accordingly, we reverse the trial court's judgment and remand this case to that court for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
[1] Because the record on appeal is sketchy as to the facts surrounding this case, we have not attempted to discuss the facts of this case.
[2] If we remanded this case only for the trial court to make specific, written findings of fact regarding each of theBarker factors, we still would not be able to properly evaluate the trial court's ruling on the motion to dismiss because the record includes very little relevant information.
 *Page 436