KELLUM, Judge.
The appellant, James W. Bailey, was convicted of trafficking methamphetamine, a violation of § 13A-12-231(6), Ala.Code 1975; unlawful manufacturing of a con *149 trolled substance in the first degree, a violation of § 13A-12-218, Ala.Code 1975; and possession of precursor chemicals, a violation of § 20-2-190, Ala.Code 1975. The circuit court sentenced Bailey as a habitual felony offender to life imprisonment on the trafficking and unlawful-manufacturing convictions, and to 18 years’ imprisonment on the possession-of-precursor-chemicals conviction. The court ordered Bailey to pay $750 to the crime victims compensation fund for each conviction, as well as all statutorily mandated fines and assessments. The court ordered that Bailey’s sentences for trafficking and manufacturing would run concurrently and his sentence for possession of precursor chemicals would run consecutively to the other two sentences. This appeal followed.
I.
Bailey first contends that the circuit court abused its discretion by denying his motion to suppress evidence seized under a search warrant that was determined by the court to be invalid. Specifically, Bailey contends that the search of his house pursuant to an invalid warrant amounted to a warrantless search without probable cause or exigent circumstances and thus violated his constitutional rights.
The evidence adduced at the suppression hearing indicated the following pertinent facts. In December 2004, Officer Scott Langley, who at that time was a deputy with the Houston County Sheriffs Department, requested a search warrant for a residence based on information received from other investigators and an informant that Bailey and a female were in possession of methamphetamine and chemicals used in manufacturing methamphetamine. Further, Allen Hendrickson, an investigator with the Henry County Sheriffs Department, advised Officer Langley that he had smelled a strong chemical odor associated with the manufacture of methamphetamine at the residence while he was conducting an interview with Bailey and the female. After compiling the above evidence in an affidavit form, Officer Langley telephoned Judge C. Lawson Little to secure a warrant. Officer Langley testified that he based his request for the warrant on reliable information and that he had filed the warrant in good faith. According to Officer Langley, Judge Little did not swear him in before hearing the evidence in support of the search-warrant request. Officer Langley explained that he appeared before Judge Little when he made the return on the search warrant and that Judge Little signed the warrant at that time.
Judge Little had no independent recollection of issuing the search warrant. Judge Little acknowledged that he authorized warrants by telephone. Judge Little explained that he usually made the officer requesting the warrant tell him the basis of the affidavit for the search warrant and he would then determine if the basis offered was sufficient. Judge Little testified that he did not always swear in the affiant and that he could not remember whether he did in this case.
Based on the evidence received at the suppression hearing, the circuit court held that the search warrant was invalid. However, the circuit court concluded that the evidence seized upon execution of the search warrant was admissible under the good-faith exception under the exclusionary rule. “The good faith exception provides that when officers acting in good faith, that is, in objectively reasonable reliance on a warrant issued by a neutral, detached magistrate, conduct a search and the warrant is found to be invalid, the evidence need not be excluded.” Rivers v. *150 State, 695 So.2d 260, 262 (Ala.Crim.App.1997).
In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), a case relied on by the circuit court, the United States Supreme Court recognized four circumstances in which the good-faith exception was inapplicable: (1) when the magistrate or judge relies on information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) when the magistrate wholly abandons his judicial role and fails to act in a neutral and detached manner; (3) when the warrant is based on an affidavit so lacking an indicia of probable cause as to render official belief in its existence entirely unreasonable; .and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.
Bailey argues on appeal that Judge Little’s conduct and the conduct of Officer Langley do not support the application of the good-faith exception in the instant case. Bailey argues that Judge Little abandoned his judicial role and failed to act in a neutral and detached manner. However, the evidence presented at the suppression hearing establishes that none of the circumstances set forth in Leon were present in this case to negate the good-faith exception. Judge Little required Officer Langley to set forth the specific evidence upon which he was basing the request for the search warrant. Only after hearing that evidence did Judge Little agree to issue the search warrant. Judge Little’s failure to swear in Officer Langley before issuing the search warrant does not, in and of itself, evidence an abandonment of a judicial role and a lack of neutrality. The evidence does not support a conclusion that Judge Little wholly abandoned his judicial role. See Leon, supra. Therefore, the circuit court did not abuse its discretion by denying the motion to suppress.
We note that the dissent’s interpretation of the Supreme Court’s holding in Leon effectively broadens the limitations to the good-faith exception created by the Supreme Court and narrows the applicability of the good-faith exception. The dissent maintains that the warrant lacks “ ‘indicia of probable cause’ by virtue of the fact that it was not based on sworn testimony,” 67 So.3d at 159, and, therefore, falls within one of the limitations to the good-faith exception. However, in Ex parte Green, 15 So.3d 489 (Ala.2008), and cases cited therein—cases relied on by the dissent— the appellate courts declined to apply the good-faith exception to the exclusionary rule because the affidavits used to obtain the search warrants failed to contain sufficient information to allow a determination that the facts alleged in the affidavit were current rather than remote. The dissent cites Anderson v. State, 445 So.2d 974 (Ala.Crim.App.1983), in support of its proposition; however, Anderson was decided by this Court before the United States Supreme Court issued its decision in Leon.
II.
Bailey further contends that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. Specifically, Bailey argues that the 40-month delay between his arrest and his trial was prejudicial and resulted in the denial of his right to a speedy trial.
In determining whether a defendant has been denied his constitutional right to a speedy trial, we apply the test announced by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We consider the following four factors: (1) the *151 length of the delay; (2) the reasons for the delay; (3) the defendant’s assertion of his right to a speedy trial; and (4) the prejudice to the defendant.
The Alabama Supreme Court in Ex parte Walker, 928 So.2d 259, 263 (Ala.2005), stated:
“ ‘A single factor is not necessarily determinative, because this is a “balancing test, in which the conduct of both the prosecution and the defense are weighed.” ’ Ex parte Clopton, 656 So.2d [1243] at 1245 [ (Ala.1985) ] (quoting Barker, 407 U.S. at 530). We examine each factor in turn.”
928 So.2d at 263.
A. Length of the delay. Bailey was arrested on December 22, 2004, indicted on April 22, 2005, and tried May 12, 2008. The delay in this case was almost 41 months.
“In Doggett v. United States, the United States Supreme Court explained that the first factor — length of delay — ‘is actually a double enquiry.’ 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The first inquiry under this factor is whether the length of the delay is ‘ “presumptively prejudicial.” ’ 505 U.S. at 652, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 530-31, 92 S.Ct. 2182). A finding that the length of delay is presumptively prejudicial ‘triggers’ an examination of the remaining three Barker factors. 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (‘[A]s the term is used in this threshold context, “presumptive prejudice” does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry.’). See also Roberson v. State, 864 So.2d 379, 394 (Ala.Crim.App.2002).
“In Alabama, ‘[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant — whichever is earlier — to the date of the trial.’ Roberson, 864 So.2d at 394. Cf. § 15-3-7, Ala.Code 1975 (‘A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender.’); Rule 2.1, Ala. R.Crim. P. (‘All criminal proceedings shall be commenced either by indictment or by complaint.’).”
928 So.2d at 263-64.
In the instant case, the almost 41-month delay was presumptively prejudicial. See State v. Van Wooten, 952 So.2d 1176 (Ala.Crim.App.2006) (29-month delay was presumptively prejudicial); State v. Stovall, 947 So.2d 1149 (Ala.Crim.App.2006) (41-month delay was presumptively prejudicial); Vincent v. State, 607 So.2d 1290 (Ala.Crim.App.1992) (31-month delay was presumptively prejudicial). Cf. State v. Johnson, 900 So.2d 482 (Ala.Crim.App.2004) (28-month delay was not presumptively prejudicial); Payne v. State, 683 So.2d 440 (Ala.Crim.App.1995) (25-month delay was not presumptively prejudicial).
B. Reasons far delay. The following dates are helpful in analyzing this factor:
December 22, 2004 — Bailey arrested.
April 22, 2005 — Bailey indicted.
May 12, 2005 — Bailey filed letter requesting speedy trial.
August 17, 2005 — Bailey arraigned.
July 27, 2005 — Bailey’s first attorney allowed to withdraw and Martin Adams is appointed to represent Bailey.
August 17, 2005 — Adams is allowed to withdraw and Mike Crespi is appointed to represent Bailey.
November 28, 2005 — Crespi filed motion to withdraw that was subsequently *152 granted by the circuit court. Jack Blu-menfield is appointed to represent Bailey.
December 28, 2005 — Blumenfield filed motion to continue trial.
January 3, 2006 — Circuit court granted motion to continue.
January 10, 2006 — Blumenfield filed motion to withdraw.
January 11, 2006 — Circuit court granted motion to withdraw and appointed William White to represent Bailey.
January 25, 2006 — William White filed motion to withdraw.
February 7, 2006 — Circuit court entered an order continuing case and appointing Hampton Baxley to represent Bailey.
October 19, 2006 — Baxley filed a motion for a continuance citing a scheduling conflict.
November 13, 2006 — Baxley filed a motion to withdraw after Bailey informed him that he no longer desires to be represented by him. The court denied the motion unless Bailey secured representation within 30 days.
November 21, 2006 — Bailey filed pro se motion to suppress evidence.
November 29, 2006 — Bailey filed motion to “pass the cases.”
December 5, 2006 — Circuit court granted motion “to pass cases” and Bailey filed motion, pro se, to represent himself; the court granted Bailey’s motion.
January 18, 2007 — Baxley filed second motion to withdraw.
January 29, 2007 — Circuit court granted motion to withdraw.
April 4, 2007 — Billy Sheffield filed motion to withdraw.
April 5, 2007 — Circuit court granted motion and appointed Allen Mitchell to represent Bailey.
April 13, 2007 — Mitchell filed motion to continue.
April 16, 2007 — Circuit court granted motion to continue and rescheduled the case for the August term.
September 6, 2007 — Circuit court continued case.
September 25, 2007 — Circuit court continued case.
January 4, 2008 — Bailey filed his last motion for speedy trial.
January 8, 2008 — Judge Denny Holloway granted the motion for a speedy trial and ordered case be placed on next available jury docket.
January 2008 — Judge Holloway retired and Judge Henry Binford was appointed to Baxley’s case.
March 27, 2008 — Judge Binford recused himself based on his former role as a prosecutor and his prosecution of Bailey.
March 31, 2008 — Case reassigned to Judge Edward Jackson.
May 12, 2008 — Trial commenced.
The record also shows that numerous other motions were filed by defense counsel and that Bailey filed numerous pro se motions. In Ex parte Walker, 928 So.2d 259 (Ala.2005), the Alabama Supreme Court stated:
“The State has the burden of justifying the delay. See Barker, 407 U.S. at 531; Steeley v. City of Gadsden, 533 So.2d 671, 680 (Ala.Crim.App.1988). Barker recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531. Courts assign different weight to different reasons for delay. Deliberate delay is ‘weighted heavily’ against the State. 407 U.S. at 531. Deliberate delay includes an ‘attempt to delay the trial in order to hamper the defense’ or ‘ “to gain some tactical advantage over (defendants) or to harass *153 them.” ’ 407 U.S. at 531 & n. 32 (quoting United States v. Marion, 404 U.S. 307, 325 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531; Ex parte Carrell, 565 So.2d [104,] 108 [ (Ala.1990) ]. Justified delay — which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible — is not weighted against the State. Barker, 407 U.S. at 531; Zumbado v. State, 615 So.2d 1223, 1234 (Ala.Crim.App.1993) (‘“Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker.” ’) (quoting McCallum v. State, 407 So.2d 865, 868 (Ala.Crim.App.1981)).”
Ex parte Walker, 928 So.2d at 265.
There is no indication in the record of deliberate delay by the State in an effort to prejudice Bailey’s defense or to enhance its own case, nor is there evidence of negligent delay. The record reflects that Bailey either disagreed with several of his appointed counsel or that his appointed counsel had other conflicts that prevented them from representing Bailey at trial. Bailey filed numerous pro se motions in the circuit court both before and after he requested to represent himself at trial. Further, as noted by the circuit court, it is not unusual for a case that has been through several judges and numerous attorneys to experience significant delay. Also, the circuit court’s dockets are such that administrative decisions are often made to move cases to accommodate the large number of cases.
C. Assertion of right to speedy trial. The record contains several requests filed by Bailey and defense counsel requesting a speedy trial. The State does not dispute that Bailey asserted his right to a speedy trial.
D. Prejudice to the defendant. Bailey contends that he was prejudiced by the 41-month delay for two reasons: (1) the delay resulted in lapses of memory of several State’s witnesses; and (2) the delay prevented him from consideration for work release or other prison programs.
“Because ‘pretrial delay is often both inevitable and wholly justifiable,’ Daggett [v. United States ], 505 U.S. [647,] 656 [ (1992) ], the fourth Barker factor examines whether and to what extent the delay has prejudiced the defendant. Barker, 407 U.S. at 532. The United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: ‘ “oppressive pretrial incarceration,” “anxiety and concern of the accused,” and “the possibility that the [accused’s] defense will be impaired” by dimming memories and loss of exculpatory evidence.’ Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532, and citing Smith v. Hooey, 393 U.S. 374, 377-79 (1969); United States v. Ewell, 383 U.S. 116, 120 (1966)). ‘Of these forms of prejudice, “the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” ’ 505 U.S. at 654 (quoting Barker, 407 U.S. at 532).”
Ex parte Walker, 928 So.2d at 267.
Bailey contends that one of his alibi witnesses could not remember dates and times clearly and that witnesses at the suppression hearing, including Judge Little and the sheriffs deputies, could not remember dates and times. “ ‘[S]pecula-tive allegations, such as general allegations of loss of witnesses and failure of memories, are insufficient to demonstrate the *154 actual prejudice’ ” that an appellant must establish. Haywood v. State, 501 So.2d 515, 518 (Ala.Crim.App.1986) (quoting United States v. Butts, 524 F.2d 975, 977 (5th Cir.1975), citing in turn United States v. McGough, 510 F.2d 598, 604 (5th Cir.1975)).
After evaluating the Barker v. Wingo factors, we cannot say that Bailey was denied his constitutional right to a speedy trial.
III.
Bailey also argues that the circuit court erred by excluding from evidence a parole-revocation report that included testimony taken at a revocation hearing from Bailey’s girlfriend that Bailey had nothing to do with the drugs — methamphetamine and precursor chemicals — and that the drugs belonged to her. Specifically, Bailey argues that, although hearsay, the report was admissible under Rule 803(8), Ala. R. Evid., as a public record or report because, he says, the information obtained at the revocation hearing had been reduced to a report by someone who had a legal duty to make such a report for the Alabama Board of Pardons and Paroles.
“The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000).
The public-record exception to the hearsay rule states that “[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... matters observed pursuant to the duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel ” are admissible as an exception to the hearsay rule. Rule 803(8), Ala. R. Evid. (Emphasis supplied.)
In this case, Bailey sought to introduce a report that contained testimony from his girlfriend that the drugs were not his but instead belonged to her. The evidence Bailey sought to introduce was a part of the record of a government agency, but was still hearsay that did not fall within one of the categories stated in the exception. Therefore, the report was properly excluded from evidence at trial.
Bailey further argues that the evidence was admissible as a declaration against interest under Rule 804(b)(3), Ala. R. Evid., and that the circuit court’s decision to disallow the evidence violated his constitutional right to present a defense under Ex parte Griffin, 790 So.2d 351 (Ala.2000). However, Bailey did not make these arguments to the circuit court as a basis for the admission of the hearsay evidence. Therefore, the claims are not preserved for our review. See Shouldis v. State, 953 So.2d 1275, 1280 (Ala.Crim.App.2006) (“ ‘[t]he statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ Ex parte Frith, 526 So.2d 880, 882 (Ala.1987).”).
IV.
Finally, Bailey contends that the circuit court erred when it denied his motion for a judgment of acquittal, because, he argues, the evidence was insufficient “to establish the criminal knowledge or intent necessary for conviction where [the State] failed to prove beyond a reasonable doubt his guilt.” (Bailey’s brief, p. 64.) Bailey argues that the evidence failed to show constructive possession by showing that he had criminal knowledge of the illegal substances or intent to control them.
*155 The evidence presented at trial established the following pertinent facts. On December 22, 2004, various law-enforcement officers executed a search warrant on a residence in Dothan. Terry Nelson, one of those officers, testified that he could smell a strong chemical smell after he opened the front door of the house. According to Officer Nelson, the chemical smell is a smell associated with a methamphetamine lab.
Officer Nelson testified that Bailey and his girlfriend were sitting on a couch when he executed the warrant. After entering the house, the officers performed a search of the house. Officer Nelson testified that they found the following items under the kitchen sink: a 20-ounce plastic bottle containing a clear liquid, a 20-ounce plastic bottle containing a bi-layered liquid, a gallon of Coleman brand fuel, one gallon of acetone, a 82-ounce can of acetone, three 18-ounce cans of Red Devil brand lye, two gallons of muriatic acid, one 82-ounce bottle of Liquid Heat, two propane cylinders, boric acid, one gallon of distilled water, and 32 ounces of alcohol. Officer Nelson testified that they also found more acetone, Coleman fuel and an off-white substance on some glassware in the kitchen. Officer Nelson explained that the items found in the kitchen were all commonly used to make methamphetamine and .evidenced the operation of a methamphetamine lab. According to Officer Nelson, the bi-layered fluid found was “meth oil.” (R. 220.)
Officer Nelson testified that a search of the attic revealed three trash bags containing empty acetone cans, Coleman brand camping fuel, Red Devil brand lye, coffee filter, striker plates, denatured alcohol, empty blister packs of the medication Su-dafed, and nine empty boxes of Sudafed. Officer Nelson explained that he discovered the trash bags in the attic by entering the attic through an access door located in Bailey’s bedroom. Officer Nelson testified that the ephedrine in Sudafed was commonly used to make the methamphetamine.
Officer Nelson testified that he had no doubt that Bailey was living at the house at the time the search warrant was executed. Law-enforcement officers had conducted surveillance of the house for at least one month before the execution of the search warrant and had seen Bailey at the house daily. According to Officer Nelson, it was a known fact that Bailey lived at the house.
Bailey testified that he had been living with his girlfriend, but decided to leave the house after he and she had a fight. Bailey testified that when he returned to the house he found a man named “Mike” there with Bailey’s girlfriend. According to Bailey, the house smelled like methamphetamine. Bailey stated that he was familiar with the smell of methamphetamine. Bailey testified that he told his girlfriend to get the stuff out of the house and then left. On cross-examination, Bailey testified that he knew the methamphetamine lab was in the house, but that he found out only by accident. Bailey testified that he did not report his findings to local law enforcement.
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evi *156 dence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
“ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’ ”
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004) (quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).
It is undisputed that the drugs were not in Bailey’s actual possession at the time of his arrest. Therefore, the State must prove that Bailey was in constructive possession of the drugs. See Ex parte J.C., 882 So.2d 274 (Ala.2003).
“ ‘ “Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item.” United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.1980); United States v. Phillips, 496 F.2d 1395, 1397 (5th Cir.1974), cert. denied, 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). “Constructive possession may be determined by weighing those facts which tend to support the defendant’s necessary control over the substance against those facts which demonstrate a lack of dominion and control.” Roberts [v. State ], 349 So.2d [89] at 91 [ (Ala.Crim.App.1977) ].’ ”
Flake v. State, 980 So.2d 440, 442-43 (Ala.Crim.App.2007) (quoting German v. State, 429 So.2d 1138, 1140 (Ala.Crim.App.1982)). It is unnecessary to show that the accused had the drug on his person or within his immediate reach; however, it is sufficient if he is knowingly in a position to exercise dominion and control over the drug, either directly or through others. Flake, 980 So.2d at 443.
“While proximity to a contraband alone is not enough to establish constructive possession, ‘where other circumstantial evidence ... is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt of such charges.’ Soriano v. State, 527 So.2d 1367, 1372 (Ala.Cr.App.1988); United States v. Whitmire, 595 F.2d 1303, 1316 (5th Cir.1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980).”
*157 Mobley v. State, 563 So.2d 29, 32 (Ala.Crim.App.1990).
In the instant case, the evidence presented by the State established that Bailey knew that a methamphetamine lab was being operated in the house he shared with his girlfriend. Items associated with, and ingredients used to make, methamphetamine were found in the kitchen — a common area shared by both Bailey and his girlfriend. A search of the house also revealed three trash bags full of items evidencing the manufacturing of methamphetamine in the attic, which was accessible through Bailey’s bedroom. Officer Nelson testified that a strong chemical odor was present when he entered the house and found Bailey sitting on the couch. Given the evidence presented at trial, we conclude that the circuit court did not err when it denied Bailey’s motion for a judgment of acquittal.
Based on the foregoing, the circuit court’s judgment is affirmed.
AFFIRMED.
WISE, P.J., and WINDOM and MAIN, JJ., concur.
WELCH, J., dissents, with opinion.