STEPHEN J. WINDHORST, Judge.'
| ^Plaintiff, Teen Town Productions, LLC. (“Teen Town”), filed suit against defendants, John T. Scurlock, Sr. and Management and Rentals, Inc. (“Mr. Scur-lock”),[1] for damages for breach of lease agreement and conversion. By supplemental petition, Teen Town asserted violations of the Unfair Trade Practices Act, and prayed for damages and treble penalties. Mr. Scurlock filed a reconventiónal demand for past due rent payments and payments for products leased.
Prior to trial, Mr. Scurlock died and Patricia B. Scurlock, as surviving spouse and as the appointed administratrix of the Estate of John T. Scurlock, was substituted as defendant in this matter. Mr. Scur-lock’s deposition was entered into.evidence at trial.
During the pre-trial proceedings, Teen Town filed a Motion for Evidentiary Presumption due to Spoliation, requesting that the trial court shift the burden of proof of the value of items subject to the conversion claim to defendants. The trial court denied the motion;- however, it reserved the right to Teen Town to raise the issue again at'trial.
| a After the trial, the court rendered judgment in favor of Mr, Scurlock, dismissing Teen Town’s suit with prejudice. The court further denied Teen Town’s re-urged Motion for Evidentiary Presumption due to Spoliation of Evidence. The court also rendered judgment on the reconven-tional demand in favor of Mr. Scurlock in the amount of $75,100.00 plus judicial interest from the date of demand.
Teen Town appeals from the judgment dismissing its claims against Mr. Scurlock. We affirm the trial court’s judgment.
FACTS'
Teen' Town was a limited liability company formed by Craig Schaffer and Gary Spindel, with the intent of opening a teen club. ' Mr. Schaffer was the sole shareholder and managing member of Teen Town. Mr. Spindel was performing work for Teen Town, with the expectation that he would become a partner in one to two years.
Mr. Scurlock owned property located at 8216 David Drive, Metairie, Louisiana. On December 16, 2002, Téen Town leased the property. The Lease Agreement provided that it would run for one year, from January 1, 2003 until December 31, 2003, with an option to renew yearly for up to five years. The leased provided for rental payments as follows: January $0.00; February $6,000.00; March $6,000.00; April $7,000.00; May $7,000.00; June $8,000.00; July $9,000.00; July 15th — lump sum pay- *1212 merit of $20,000.00; for a total of $68,000.00 from January 1 to July 16. Thereafter, rental payments.of $15,000.00 were due at the beginning of each month. Teen Town’s total rent obligation under the one year lease was $115,000.00. The lease further provided that, should the parties desire to extend the lease, the negotiations must be completed by November 1st of the current year,' and prior to the expiration of the lease. In addition, the lease Uprovided that any modification to the- lease had to be in writing and signed'by both parties.
Mr.. Scurlock also owned a business that made and rented Spacewalks, next door to the property leased to Teen Town. Teen Town rented four Spacewalks from Mr. Scurlock.[2]
Teen Town opened its club for teenagers, called Tremors, in January of 2003. In addition, it rented out the..space .for private parties and it ran a Spacewalk rental business with the Spacewalks it obtained from Mr. Scurlock. Initially, Teen Town was profitable and it paid its monthly rental obligations as follows: January $7,500.00; February $8,000.00; March $10,000.00; April $10,500.00; May $10,500.00; June $10,500.00; for a total of $57,000.00.
On July 5, 2003, a s&ooting occurred during a private party at the club. The shooting was publicized, detrimentally affecting Teen Town’s business. As of July 31, 2003, Teen Town owed $6,000.00 in back rent. In August of 2003, Mr. Schaf-fer, on behalf of Teen Town, signed an acknowledgment that at that time, Teen Town owed the $6,000.00, and also that it owed an additional $16,600.00 for rentals of Spacewalks used by Teen Town. . -Teen Town made no further rental payments for the remainder of,the lease, incurring an additional $52,500.00 in unpaid rents.
In his deposition, Mr. Schaffer stated that the shooting adversely affected his business. At the trial, held some ten years later, Mr. Schaffer stated that the business was not seriously affected by the shooting and that he ceased the .teen club-operations on request of Mr. Scurlock. Mrs. Scurlock stated that she was often next door at the Spacewalk business, and she often would help Mr. Schaffer’s wife lBwith the entry doqr at the teen club.. She observed that after the shooting, Teen Town’s clientele stopped coming.
It is clear that Teen Town ceased business operations after the July shooting, with the exception of a few pre-booked events. According to Mr. Schaffer, after the shooting incident, Mr. Scurlock' stated that he would not renew the lease for the operation of the business as a teen club. Mr. Schaffer testified that he met with Mr. Scurlock in August and, at that meeting, Mr. Scurlock agreed to relieve him of his remaining rent obligations if he discontinued the teen club operations. At that August meeting, Mr. Scháffer informed Mr. Scurlock that he intended on renewing the lease, and he had plans to form a new limited liability company, Metairie Supper Club, L.L.C., for the purpose of operating a reception hall.. He -and Mr. Scurlock discussed renovations to convert the property into a reception hall. Mr. Schaffer provided Articles of Incorporation and a *1213 business, plan as evidence of his intent.[3]
In his deposition, Mr. Scurlock denied agreeing' to any business déalings or to any renewal of Teen Town’s lease. In addition, there were not written modifications to the lease signed by either Mr. Scurlock or Mr. Schaffer. Furthermore, there were no writings evidencing any intent to continue the'léase'after December 31,2003.
According to Mr. Scurlock, Mr. Schaffer made no attempt to retrieve Teen Town’s property after it ceased- operations, more specifically from August of '2003 until- December 15, 2003. Mr. Scurlock stated that there were multiple keys to the premises, from five to twenty, in possession of various individuals. Mr. Scurlock was concerned -about- the safety of the building, so he had the locks changed on | (¡December 15, 2003. Mr. Schaffer contended that he was not allowed to access the property at that time, while Mr. Scurlock stated that he informed Mr. Schaffer prior to changing the locks of his intent, and told Mr. Schaffer that he could gain access whenever he wanted. In addition, third party vendors were allowed access to retrieve equipment that they had rented to Mr. Schaffer.- In July of 2004, Teen Town enteréd the property to inventory and retrieve its property and records. Mr. Schaffer contended that a' significant amount of property and all of Teen Town’s business records were missing at that time.
At trial, Mr. Schaffer stated that while third party vendors were allowed to enter the premises and retrieve leased property, by that time, the majority of the third party equipment had already been re-plaeed with Teen Town equipment. Mr. Scurlock,.stated that after Teen Town’s vendors retrieved their property, very few items remained on the premises.
DISCUSSION
, In this appeal, Teen -Town alleges that the trial court erred in finding that Mr. Scurlock did not breach the lease agreement, in finding that Then Town did not prove its claims of conversion of property, and in failing to find Mr; Scurlock liable for Teen Town’s' loss of profits and Mr. Schaffer’s loss of business opportunity.
A trial court’s determination of fact is entitled to great deference on review, and may not be disturbed by an appellate court absent manifest error. Normand v. Cox Communs. La., LLC, 14-563 (La.App. 5 Cir. 12/23/14), 67 So.3d 156, 158. Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must, review the record in its entirety and (1) find that a reasonable factual basis. does not exist for the finding, and, (2) further determine that, the record establishes that the fact,finder is clearly wrong or manifestly |7erroneous. Lomont v. Myer Bennett, 14-2483 (La.06/30/15), 172 So.3d 620, 633. Where a conflict in the testimony exists, reasonable evaluations of credibility and reasonable inferences' of fact should not be disturbed, even though the reviewing court may feel'that its own evaluations and inferences are more reasonable. Normand, gupra at 158.
In its -reasons for judgment, the trial court made the following findings:
This Court finds that Teen Town did not prove that defendants had taken its *1214 property. The premises was [sic] abandoned by Teen Town. Therefore, Defendants are not liable for conversion or breach of peaceable possession. Teen Town did not present competent evidence regarding the value of its property. Therefore; Teen Town is not énti-tied to its proposed damages.
Further, the Court finds that the Lease between the parties expired on. December 31, 2003 and there was no written agreement between the parties in connection with the reception hall or modifications of the Lease— Any modifications to the Lease itself must have been made in writing. . Any verbal agreements between the parties did not modify the terms of the Lease."
Breach of Lease
In its first three assignments of error, Teen Town contends that the trial court erred in failing to find that Mr. Scurlock breached its peaceable possession of the' leased property, thereby breaching the lease itself. Teen Town further argues that the court erred in not awarding to Teen Town damages for breach of lease, and for denial of the use of, and access to, Teen Town’s property and equipment.
Pursuant to La. C.C. art. 2682(3), the lessor is obligated to “protect the lessee’s peaceful possession for the duration of the lease.” Teen Town argues that Mr. Scur-lock changed the locks on December 15, 2003, and denied it access to the premises thereafter, disturbing its right of peaceful possession. Mr. Scurlock admitted that he changed the locks in response to a burglary report, and because there were a number of keys “floating around” and possibly in unknown hands. However, he also stated that access to the new key was provided to Teen Town. |sThe trial court found that Mr. Scurlock did not breach Teen Town’s peaceable possession. In addition, the trial court found that the premises were abandoned by Teen Town, and that Mr. Schaffer made no attempt to retrieve Teen Town’s property, and thus presumably no attempt to utilizé said property.
At trial, Teen Town introduced into evidence a letter that Mr. Schaffer had written to Mr. Scurlock, in which Mr. Schaffer stated that he was informed by a third party that he no longer had access to the business without Mr. Scurlock’s authorization. He tried to contact Mr. Scurlock but was unable. Mr. Schaffer also said that he was contacted by third party vendors and gave them Mr. Scurlock’s information to retrieve items he leased from them. No evidence, other that Mr. Schaffer’s own testimony, was introduced to support his allegations in the letter. In addition to Mr. Scurlock’s deposition testimony that Mr. Schaffer was given access to the new key, Mrs. Scurlock also stated that the new key was available to Mr. Schaffer if he needed it.
In brief to this Oourt, Teen Town argues that the trial court erred, in failing to allow into evidence letters written by its counsel addressed to Mr. Scurlock’s, former counsels, concerning Mr. Schaffer’s access to the building. The record supports the finding that Teen Town failed to lay a proper foundation for the admission of these letters. Furthermore, Mr. Schaffer contended at trial that he was not allowed access to the building after the lease expired, as was stated in the letters.
In addition, Teen Town presented no evidence of any damages incurred by its alleged failure to have access to the property located at the premises for the last two weeks of the lease.
| .^Accordingly, we find no manifest, error in the trial court’s denial of Teen Town’s *1215 claims for breach of peaceable possession and for damages for the loss of access to or use of Teen Town equipment.
Conversion
In its fourth assignment of error, Teen Town argues that the , trial court erred in failing to award damages for Teen Town’s total loss of equipment and property. Teen Town argues the theory of conversion. In conjunction with this assignment of error, Teen Town argues that the trial court erred in failing to apply an adverse inference' against defendants based upon the theory of spoliation of evidence. In addition, the trial court failed to allow the introduction of letters, written after the termination of the lease, in which Teen Town’s attorney attempts to secure access to the premises.
A conversion consists of an act in derogation of another’s possessory rights, and any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. One found guilty of tortious conversion is liable in damages. The measure of recovery is the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion.
As in any tort action, in a suit for wrongful conversion plaintiff bears the burden of proving the extent of the damages he suffered. A judgment awarding no damages is valid where plaintiff fails to prove damages caused by the tortious act of the defendant, even though the defendant is at fault. (Citations omitted.)
Unique Constr. Co. v. S.S. Mini Storage, Inc., 570 So.2d 161, 164 (La.App. 5th Cir.1990).
Teen Town contends that by the time Mr. Schaffer was allowed access to the premises, most of its equipment and property, and all of its records were missing. Teen Town argues that Mr. Scurlock should be liable for damages for this missing property.
| mTeen Town, through Mr. Schaffer, offered no proof as to the person or persons who actually took the property that it contends was taken, and Mr. Schaffer admitted that he did not know who had removed property from the premises.
To prove what property Teen Town claimed was taken, and its value, Teen Town created, a list with the name of the item and an alleged monetary value. Gary Robbins, an independent insurance adjuster, was ruled qualified by the court to make estimates on values of damages and replacement of property items. He stated that he was hired by Mr. Schaffer in July of 2010 and was given this inventory list of property with values and asked to verify the values assessed. Mr. Robbins did not see the actual items, and he was not given the age or condition of each item as it existed in late 2003 or early 2Ó04. Mr. Schaffer admitted on cross-examination that he did not have any receipts to show the purchase price of any of the items he alleged were converted.
Since Teen Town offered no proof as to the person or persons who actually took the property that it contends was taken, there is no manifest error in the trial court’s finding that Teen Town did not prove that defendants had taken the property.
Assuming that Teen Town had proved a conversion, it failed to provide sufficient proof of the extent of the damages suffered. According to testimony at *1216 trial, Teen Town provided a list with one or two word descriptions of the property and a dollar amount as to its value, ie. “desk — $200.00.” The list itself was not admitted at trial: In its reasons for judgment, the trial court stated that it found “Teen Town’s inventory list to lack credibility and the valuation expert’s testimony to be based upon speculation.” In Unique Constr. Co., supra at 165, the court said that “Where no contradictory evidence is presented, plaintiffs testimony as to the Invalue and description of the lost property, including the place of purchase and the price, may satisfy his burden of proof. However.this testimony must include a minimal degree of detail or specificity as to value to support an award of monetary damages.” There. was no minimal degree of detail or specificity .as to value in the list provided to Mr. Robbins,.
Finally, Teen Town contends that the trial court erred in denying its Motion for Evidentiary Presumption Due to Spoliation of Evidence. With this motion, Teen Town sought to shift its burden of proof to defendants, making Mr. Scurlock prove the existence and value of what items were present on the premises and subsequently lost.
The theory of “spoliation of evidence” refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. Desselle v. Jefferson Parish Hosp. Dist. No. 2, 04-455 (La.App. 5 Cir. 10/12/04), 887 So.2d 524, 534. The tort of spoliation of evidence has its roots in the evidentiary doctrine of “adverse presumption,” which allows a jury instruction for the presumption that the destroyed evidence contained information detrimental to the party who destroyed the evidence unless such destruction is adequately explained. Longwell v. Jefferson Parish Hosp. Serv. Dist. No. 1, 07-259 (La.App. 5 Cir. 10/16/07), 970 So.2d 1100, 1104. Spoliation of evidence is not a legal theory that shifts the burden of proof from one party to the other, thereby requiring that the defendant supply the-evidence to prove the plaintiffs claims. Thus, the trial court did not err in denying Teen Town’s Motion for Evidentiary Presumption Due to Spoliation of Evidence.
We find no manifest error in the trial court’s ruling denying damages for conversion and/or loss of equipment and property.
| laLost business and loss of business opportunity
’ In its last assignment of error, Teen Town challenges the trial court’s failure to find Mr. Scurlock liable for its loss of business and the loss of its alternative business. In conjunction with this issue, Teen Town contends that the trial court erred in excluding certain items from evidence, namely the corporate documents and the business plan of Metairie Supper Club, L.L.C.
According to Mr. Schaffer, after the shooting Mr. Scurlock indicated that he no longer wanted a teen club on the premises. Mr. Scurlock met with Mr. Schaffer to explore the option of utilizing the premises ás a reception hall. However, in order to do this, ‘they needed to secure another investor. Teen Town ceased its teen club operations, but continued with confirmed commitments, such as party rentals. In September of 2003, Mr. Schaffer had secured two potential investors for this potential new venture. Mr. Schaffer and Mr. Spindel conducted a meeting at which Mr. Scurlock and his wife, Patty, and the potential investors were present. A second meeting was later held, the result of which *1217 was that a business called the Metairie Supper Club. L.L.C. was formed. In October of 2003, Mr. Scurlock expressed his dissatisfaction with the potential investors, and requested that Mr. Schaffer find another, more suitable, investor. In November of 2003, Mr. Schaffer and Mr. Spindel informed Mr. Scurlock that they had failed to find a suitable investor.
Mr. Schaffer further stated that around that time, he and Mr. Spindel discovered that Mr. Scurlock was seeking or had found a new lessee to inhabit the premises as of January 2004, despite Mr. Scurlock’s assertion to them that the lease would be renewed. '
Although not stated by the plaintiff as such, it appears that Teen Town raises a claim of detrimental reliance under La. C.C. art. 1967.[4] .In order to prove its claim, Teen Town had to prove the following elements: “(1) a representation by conduct or word, (2) justifiable i’eliance, and (3) a change in position to one’s detriment because of the reliance.” Prime Income Asset Mgmt. v. Tauzin, 07-1380 (La.App. 3 Cir. 04/30/08), 981 So.2d 897, 905.
Mr. Schaffer testified that, in reliance on Mr. Scurlock’s assertions that he would renew Teen Town’s lease and also invest in a reception hall business, Teen Town ceased operating as a teen club and formed the Metairie Supper Club, L.L.C. He asserts that Teen Town lost profits by ceasing its teen club business and also lost the business opportunity when Mr. Scurlock failed to renew the lease.
Loss profits resulting from an offense or quasi offense must be proven with a reasonable ' certainty, and' damages which are purely conjectural- will not be allowed. The burden of proving the existence of-damages and the causal connection between them and the delictual act rests with the plaintiff. ■ Such proof must be shown by a preponderance of the evidence. ’ A’ mere possibility is not sufficient.
Meyers v. Imperial Casualty Indem. Co., 451 So.2d 649, 658, (La.App. 3 Cir.1984), citing Coco v. Richland General Contractors, Inc., 411 So.2d 1260 (La.1982), writ denied, 413 So.2d 909 (La.1982).
In this case, the trial court found that Teen Town ceased business as a result of the shooting and not because of any assertions by Mr. Scurlock. Teen Town presented no evidence of what its profits would have been, had it continued in business after the shooting until the end of the lease, and also presented no evidence to show that there was a connection between any acts of Mr. Scurlock | uand the alleged lost profits. Accordingly, the- trial court did not err in denying damages for lost profits.
Teen Town also alleges loss of business opportunity. It is unclear on what grounds this claim is asserted. To the extent that Mr. Schaffer claims that Teen Town’s lease was not renewed, the lease *1218 clearly states that it would expire at the end of the year if not renewed, in writing, by November 1 of the current year. There was no written renewal of the lease, and therefore the lease expired.
Teen Town seems to argue that Mr. Scurlock entered into a business deal with Mr. Schaffer and Mr. Spindel, for the purpose of opening a reception hall to be run by Metairie Supper Club, L.L.C., and that Mr. Scurlock later refused to continue with the deal. In its brief, Teen Town contends that the trial court erred in excluding from evidence Metairie Supper Club’s Articles of Incorporation and business plan. However, Metairie Supper Club is not a party to this suit, nor is Mr. Schaffer or Mr. Spindel individually.[5] Thus, any issue with Metairie Supper Club is not relevant in these proceedings.
CONCLUSION
For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.
AFFIRMED

. After the filing of this suit, Management and Rentals, Inc. was formally dissolved, and Mr. Scurlock became liable for all claims against Management and Rentals, Inc,

. Initially, the agreement was for Teen Town to purchase the Spacewalks. In August of 2003, when payment had not been made, Mr. Scurlock chdrged a rental fee for the Spacewalks instead. •

. On cross-examinátion at trial, Mr. Schaffer admitted that he did not mention these alleged dealings with Mr. Scurlock'in his deposition taken while .Mr, Scurlock was still alive.

. Art. 1967 provides:
Cause is the reason why. a party obligates himself. ; ;
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of- the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

. A limited liability company is a legal entity separate from its member owners. La. R.S. 12:1301(10), 1304A; Doe v. Hawkins, 09-1184 (La.App. 3 Cir. 06/09/10), 42 So.3d 1000, 1010.