593 So.2d 870 (1992)
Roger D. CLARK and Jeanette Clark, Plaintiffs-Appellants,
v.
ARK-LA-TEX AUCTION, INC., et al., Defendants-Appellees.
No. 23112-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1992.
Writ Denied April 10, 1992.
*873 John T. Bennett, Marksville, Barham & Markle by Mack E. Barham, Robert E. Arceneaux, Lee A. Archer, New Orleans, for plaintiffs-appellants.
Mayer, Smith & Roberts by Henry N. Bellamy, Shreveport, for defendants-appellants Jonesboro Ford, Lincoln, Mercury, Inc., West American Ins. Co. and Ohio Cas. Ins. Co.
Cook, Yancey, King & Galloway by Samuel W. Caverlee, Lee H. Ayres, F. Drake Lee, Jr., Shreveport, for defendants-appellees Ark-La-Tex Auction, Inc. and Aetna Cas. and Sur. Co.
Bodenheimer, Jones, Klotz & Simmons by F. John Reeks, Jr., G.M. Bodenheimer, Jr., Shreveport, for defendants-appellees Ark-La-Tex Auto Auction, Inc. and U.S. Fire Ins. Co.
Lunn, Irion, Johnson, Salley & Carlisle by Brian Coody, Shreveport, for defendant-appellee Aetna Cas. and Sur. Co.
Before SEXTON, LINDSAY and VICTORY, JJ.
*874 LINDSAY, Judge.
This lawsuit arises from an accident in which plaintiff, Roger D. Clark, a used car dealer, slipped and fell while attending an automobile auction. Following trial, the jury awarded damages and assessed comparative fault between Mr. Clark; Ark-La-Tex Auto Auction, Inc. (Ark-La-Tex), the owner of the site of the accident; and Jonesboro Ford-Lincoln-Mercury (Jonesboro Ford), the owner of a car which leaked the fluid upon which Mr. Clark slipped. Subsequently, the trial court signed a judgment consistent with the jury verdict and interpreted a partial settlement agreement entered into by the plaintiffs with Ark-La-Tex and its insurers, and Mr. Clark's worker's compensation insurer. Thereafter, Jonesboro Ford appealed from the jury verdict. The plaintiffs appealed certain aspects of the jury verdict and the trial court's ruling on the partial settlement agreement. Ark-La-Tex answered the appeal of Jonesboro Ford. For the following reasons, we affirm in part and reverse in part.

FACTS
On April 22, 1986, an automobile auction was held at Ark-La-Tex Auto Auction, Inc., in Shreveport, Louisiana. Jonesboro Ford had brought three cars to the auction to be sold that day, one of which was a 1980 Chevrolet Monza. Several weeks prior to the auction, Jonesboro Ford had accepted the Monza as a trade-in and was aware that the vehicle had a transmission fluid leak. However, it chose not to repair the leak, instead deciding to sell the car "as is."
The Monza was driven to the auto auction by Robert Wilson, Jonesboro Ford's general manager. Mr. Wilson parked the auto outside the auction building. Employees of Ark-La-Tex obtained information on the Monza from Mr. Wilson, and these employees later drove the car inside the auction building during the "as is" auto auction. The Monza was the second car from the end of the "as is" line. When the Monza was first driven inside, Mr. Wilson told Ed Blakey, the auctioneer and owner of Ark-La-Tex, about the leak. In turn, Mr. Blakey announced the leak over the PA system.
The auction was accomplished with great speed, each sale taking less than two minutes. Insofar as applicable here, the cars, including the Monza, were placed in a line, known as the "as is" line. The cars were driven through the auction building by employees of Ark-La-Tex while the auctioneer described the auto and sought bids from the assembled dealers who were purchasing autos for resale. Each car entered through one end of the building, stopping twice while in the building before exiting on the far end, after all bids had been received. The record shows that while the Monza was stopped at stop "No. 2", it leaked a significant quantity of transmission fluid, leaving a puddle. This puddle of transmission fluid was near the building's restaurant and was described as being about the size of a baseball cap or a letter-size sheet of paper. The reddish transmission fluid was clearly visible on the grayish concrete floor.
Mr. Clark was attending the auction to buy some vehicles for his used car lot. He was reading his NADA guidebook as he walked near the "as is" line of used cars when he slipped and fell in the puddle of transmission fluid which had leaked from the Monza. He received severe injuries to his lower back and neck which required several surgeries.
The exact circumstances of Mr. Clark's fall are contested. Mr. Calvin Kelone, a friend of Mr. Clark who accompanied him to the sale, testified that the "as is" sale had been over for 10 to 15 minutes when Mr. Clark fell. To the contrary, Mr. Blakey testified that he saw Mr. Clark fall and that the fall occurred within about two minutes after the sale of the Monza. He stated that Mr. Clark seemed to "ease down" after stepping in the puddle of transmission fluid.
Mr. Clark and his wife Jeanette filed suit. Mr. Clark sought damages for his injuries, medical expenses, and loss of income, past and future. Mrs. Clark sought damages for her loss of consortium. Defendants *875 included Jonesboro Ford and its insurers, West American Insurance Company and the Ohio Casualty Insurance Company; Ark-La-Tex and its insurers, Aetna Casualty and Surety Company and U.S. Fire Insurance Company. Other pertinent filings included a petition of intervention by Mr. Clark's worker's compensation insurer, Aetna Casualty and Surety Company, and a cross-claim by Ark-La-Tex against Jonesboro Ford.
Jury trial began on March 12, 1990. On March 19, 1990, the sixth day of an eight-day jury trial, a partial settlement agreement was entered into between the plaintiffs, Mr. Clark's worker's compensation insurer, and Ark-La-Tex and its insurers. Jonesboro Ford and its insurer were not parties to this agreement. The agreement contained a "high-low agreement," i.e., a "high cap" of $850,000 and a low guaranteed payment of $240,000 to be made to the plaintiffs by Ark-La-Tex and its insurers regardless of the jury's verdict. It also provided that Ark-La-Tex's rights under its cross-claim against Jonesboro Ford and its insurer were "waived" in favor of the plaintiffs.
Before the case was submitted to the jury, the trial court sustained Jonesboro Ford's and Ark-La-Tex's respective motions for directed verdict as to the issues of strict liability. However, Jonesboro Ford's motion for directed verdict on the issue of negligence was denied.
After all evidence had been introduced, the case was submitted to the jury on March 21, 1990. The jury found both Ark-La-Tex and Jonesboro Ford at fault and found their respective fault to be legal causes of the plaintiffs' damages. Mr. Clark was also found to be at fault. Comparative fault was assessed as follows: Mr. Clark, 22%; Ark-La-Tex, 54%; and Jonesboro Ford, 24%. The jury awarded damages in the following amounts:

EXPENSES AMOUNT
Past/future pain and suffering $285,000
Past medical expenses $ 78,000
Future medical expenses $ -0-
Loss of past earnings $150,000
Loss of future earnings $250,000
 ________
 $763,000

The jury rejected Mrs. Clark's consortium claim.
Thereafter, Jonesboro Ford and Ark-La-Tex each filed a motion for JNOV and, alternatively, for new trial on the issues of liability and loss of past earnings. The plaintiffs filed a motion for JNOV against Jonesboro Ford, seeking judgment in favor of Mrs. Clark for loss of consortium and an increase in damages for loss of future earnings. The plaintiffs also sought to enjoin Ark-La-Tex's motion on the grounds that the partial settlement agreement prohibited such motions or appeal as to the plaintiffs. All of these motions were subsequently denied by the trial court, except the plaintiffs' motion for a preliminary injunction against Ark-La-Tex, which was granted.
Additionally, the plaintiffs filed a motion for a declaratory judgment. In this motion, the plaintiffs contended that, under the partial settlement agreement, they were entitled to recover from Ark-La-Tex the 78 percent of the judgment attributable to both Ark-La-Tex and Jonesboro Ford and to further receive the assignment of Ark-La-Tex's cross-claim against Jonesboro Ford for the purpose of collecting Jonesboro Ford's 24% percent again. Or, in other words, the plaintiffs would be allowed to recover Jonesboro Ford's percentage of fault twice, once from Ark-La-Tex and once from Jonesboro Ford, collecting a total of 102% of the damages. In response, Ark-La-Tex filed a cross-motion for declaratory judgment, contesting the plaintiffs' interpretation of the agreement.
A hearing was held on the motions for declaratory judgment at which evidence was adduced. Following the hearing, the trial court found that the jury verdict determined the percentage of liability of the parties and primed any provisions to the contrary in the partial settlement agreement. The court rejected the plaintiffs' interpretation of the agreement and refused to allow the plaintiffs to obtain "double" recovery of the percentage of fault attributable to Jonesboro Ford.
*876 Jonesboro Ford appealed suspensively on the issues of liability and quantum. Ark-La-Tex answered the appeal of Jonesboro Ford as to liability, asserting that Jonesboro Ford should have been assessed with a greater degree of fault.
The plaintiffs appealed the trial court's ruling on their motion for declaratory judgment and Ark-La-Tex's cross-motion for declaratory judgment. They also appealed the degree of fault assessed against Mr. Clark and the rejection of Mrs. Clark's claim for loss of consortium.

LIABILITY

Jury Instructions
Jonesboro Ford contends that the trial court gave an ambiguous jury charge as to the shifting of the burden of proof in a slip and fall case. Specifically, the instruction recited that, after a "patron" establishes his prima facie case, the burden shifts to the "defendant business owner." Jonesboro Ford argues that the jury could have misconstrued this instruction as applying to it, not just Ark-La-Tex.
We disagree. The language of which Jonesboro Ford complains is found during the trial court's recitation of the responsibilities of a premises owner at whose business establishment a customer is injured. Thus, this jury instruction plainly applied only to Ark-La-Tex and its duty to protect its patrons on its premises.
This assignment of error has no merit.

Negligence
The parties make a variety of arguments pertaining to the jury findings of negligence and comparative fault. Generally, these arguments may be summarized by saying that each party maintains that it was free of negligence and/or was assessed with an excessive degree of fault while another party's fault was assessed too low.
It is well settled that a court of appeal may not set aside the finding of fact of a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong." Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. When findings of fact are based upon determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings of the trier of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Under the Civil Code, every act of a person that causes damage to another obliges the one by whose fault it happened to repair it. LSA-C.C. Art. 2315. Generally, negligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. Dobson v. Louisiana Power and Light Company, 567 So.2d 569 (La.1990); Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir.1991), writ denied 577 So.2d 1009 (La.1991).
A defendant's conduct is actionable under the duty-risk analysis of LSA-C.C. Art. 2315 where it is both a cause in fact of the injury and a legal cause of the harm incurred. The cause in fact test requires that but for the defendant's conduct, the injuries would not have been sustained. The legal causation test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Fowler v. State Farm Fire & Casualty Insurance Co., 485 So.2d 168 (La.App.2d Cir.1986), writ denied 487 So.2d 441 (La.1986).
Fault is the basis of recovery in a slip and fall action, and each slip and fall case must be determined in the light of its own particular circumstances. A business owner is not the insurer of the safety of its patrons. The business owner's duty to protect patrons from foreign substances is one of reasonable care under the circumstances. He must make a reasonable effort to keep the floor free of objects or substances which might cause someone to slip and fall. The business owner may not permit hazardous conditions of which he has actual or constructive notice to exist. *877 However, a patron in such an area is also charged with using reasonable care for his own safety, which includes observing and avoiding obvious hazards. Davis v. Winningham Datsun-Volvo, Inc., 493 So.2d 719 (La.App.2d Cir.1986).
Once a patron establishes a prima facie case by showing that a foreign substance was on the floor which caused him to slip and fall and that he was injured as a result, a presumption that the business owner was negligent then arises. The burden of proof then falls upon the business owner to exculpate himself from the presumed negligence. The business owner may avoid liability only by establishing that he was free from fault and that he exercised reasonable care in protecting his patrons from foreign substances. Reasonable care is exercised when the business owner takes reasonable protective measures, including periodic inspections and cleanups. The determination of whether the protective measures have been reasonable is largely dependent upon the particular circumstances of each case, taking into consideration the type and volume of the merchandise, the volume of business, the time of day, and other pertinent considerations. The degree of vigilance must be commensurate with the risk involved as determined by the above considerations. If the evidence is sufficient to establish that the business owner has carried his burden, then the presumption of negligence will be rebutted and the defendant will be exonerated from liability. Davis, supra.
In the instant case, the auto auction was open only to professional car dealers who were interested in closely examining the vehicles offered for auction. It was not open to the general public. The evidence at trial showed that spills of various automobile fluids are commonplace at such auctions. The puddle of transmission fluid at issue was, by all accounts, clearly visible to pedestrians at distances of 15 to 25 feet. However, the testimony also demonstrated that such a large spill was unusual, and that auction employees were to vigilantly observe the premises for these puddles and promptly pour oil absorbant on them to safeguard patrons of the auction.
Additionally, the record shows that Mr. Wilson, the representative of Jonesboro Ford who brought the Monza to the auto auction, warned Mr. Blakey of the transmission fluid only as the car entered the building. Had he done so earlier, the Monza could have been towed through the building to minimize the leakage (Ark-La-Tex foreman James Smith and Mr. Blakey testified that the car would have leaked less if towed) or, more importantly, an auction employee could have been specifically assigned to follow behind the car with an oil absorbant.
In reviewing the record, we note an extreme difference between the versions of the accident recited at trial. As previously stated, Mr. Clark and his companion, Mr. Kelone, testified that at least 10 to 15 minutes transpired between the end of the "as is" auction and Mr. Clark's fall. Also, Mr. Wilson of Jonesboro Ford informed Mr. Blakey of the leak as the Monza entered the building, the two men even joking about the car's condition. Yet, no cleanup of the fluid was performed. However, Mr. Blakey testified that Mr. Clark's fall occurred only about two minutes after the sale of the Monza and "immediately" after the end of the "as is" sale. Thus, it is argued, Ark-La-Tex had only a very brief time in which to respond to the presence of the puddle.
Given the jury's findings of fault against Mr. Clark, Ark-La-Tex and Jonesboro Ford, the jury apparently accepted Mr. Blakey's account of the timing of the accident. If the trier of fact accepted that testimony as credible, then it could have reasonably found fault against each of the three main parties, i.e., Mr. Clark for his inattention, Ark-La-Tex for its failure to promptly clean up the spill, and Jonesboro Ford for not providing more timely notice of the defect in its car to allow Ark-La-Tex more time to deal with the situation before and after the sale. Under such circumstances, we find no manifest error.

*878 Percentages of Fault

Allocation of fault is a factual finding which an appellate court does not disturb unless, upon articulated and detailed analysis and reasons, that finding is demonstrated to be clearly wrong. Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App.2d Cir.1990), writ denied 573 So.2d 1135 (La.1991).
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. Anderson, supra; Watson v. State Farm and Casualty Insurance Company, 469 So.2d 967 (La.1985).
As to the percentages of fault assessed by the jury, we also find no error. Mr. Clark, against whom the jury assessed 22 percent comparative fault, was bound to exhibit due care for his own safety. See Davis, supra. He could not blithely walk about an area in which puddles of automobile fluid were known to occur with total disregard of his pathway. This is particularly true where the puddle was located between the red lines marking the path utilized by cars being auctioned. The jury could have easily found Mr. Clark to be at fault due to his inattentiveness.
Jonesboro Ford, which had full knowledge of the car's condition, was chargeable with a duty to give adequate warning to the building owner to allow the owner's employees to take reasonable precautions against an unusually large leak. Jonesboro Ford was aware that the leak was seriousas demonstrated by its decision not to repair the carand that the Monza would be driven through the auction building under circumstances where dealers would be walking close to the car. The jury could have reasonably found Jonesboro Ford to have a degree of fault similar to that of Mr. Clark.
Finally, Ark-La-Tex, with its duty to its invitees, was the only party in a position to clean up a spill once it occurred. The testimony demonstrated that even after the fall, which Mr. Blakey witnessed, none of Ark-La-Tex's employees placed oil absorbant on the Monza's spills. The jury could have reasonably held Ark-La-Tex to the higher degree of fault.
A JNOV should be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986). A new trial may be granted when the verdict or judgment appears clearly contrary to the law and the evidence. LSA-C.C.P. Art. 1972. Thus, as to Jonesboro Ford's post-trial motions, we find that reasonable jurors could have reached different verdicts based upon the evidence presented. Nor was the verdict clearly contrary to the law and facts. Thus, the trial court did not err in denying Jonesboro Ford's motion for JNOV or, alternatively, for new trial.
Based on the foregoing, we find that these assignments of error have no merit.

Past Lost Wages
Jonesboro Ford contends that the jury's award of $150,000 for Mr. Clark's past lost wages is excessive. This argument is premised on the testimony of the plaintiff's expert economist, Donald Cornwell, that Mr. Clark's pretrial lost income was only $122,087.38.
Loss of business profits or loss of personal income resulting from an offense or quasi-offense are items of special damages which in many cases are not susceptible of proof to a mathematical or legal certainty. However, loss of profits or income must be proved with reasonable certainty, i.e., by the more probable than not standard, and the award cannot be based on speculation and conjecture. The trier of *879 fact must be afforded much discretion in the determination of such damages where the evidence clearly shows the damage is proven but is not capable of proof to a mathematical or legal certainty. To determine whether the trial court abused its discretion by making an excessive award, we must decide whether the award can be supported under the interpretation of the evidence most favorable to the plaintiffs which reasonably could have been made by the fact finder. Bailes v. U.S. Fidelity & Guaranty Company, 512 So.2d 633 (La. App.2d Cir.1987).
Mr. Cornwell calculated Mr. Clark's pretrial loss of wages as $122,087.38 by multiplying the number of years between the accident and trial (3.89) and Mr. Clark's average lost income and receivables ($31,384.00). However, this latter figure was based on income tax returns, and it does not take into consideration the sum of $100,000 in personal funds expended by Mr. Clark to pay off corporate debts and the fact that he was forced to sell his inventory of used cars at reduced prices when he liquidated his business during this time frame and prior to trial. We believe the jury could have properly considered these additional factors as relevant in calculating Mr. Clark's past lost income. Viewing the evidence in the light most favorable to the plaintiffs and in view of the discretion afforded the trier of fact, we find no error in the jury's award of damages for loss of past wages.
Therefore, we find no merit in this assignment of error.

LOSS OF CONSORTIUM
Mrs. Clark argues that the jury erred in rejecting her claim for loss of consortium. She also contends that the trial court erred in denying her motion for JNOV or, alternatively, for new trial based upon these claims.
The elements for a claim for loss of consortium are: loss of love and affection; loss of society and companionship; impairment of sexual relations; loss of performance of material services; loss of financial support; loss of aid and assistance; and loss of felicity. Finley v. Bass, 478 So.2d 608 (La.App.2d Cir.1985); Higley v. Kramer, 581 So.2d 273 (La.App. 1st Cir. 1991), writ denied 583 So.2d 483 (La.1991).
In several cases in which damages for loss of consortium were denied, the testimony demonstrated only that, following the accident, the injured spouse was generally moody; the testimony also failed to prove any sexual problems between the spouses. See Lejeune v. Cook, 563 So.2d 1218 (La.App. 1st Cir.1990); Armstrong v. Fireman's Fund Insurance Company, 558 So.2d 646 (La.App. 1st Cir.1990), writ denied 560 So.2d 30 (La.1990); and Johnmeyer v. Creel, 499 So.2d 571 (La.App.2d Cir.1986). However, in cases where elements of loss of consortium have been adequately established, damages have been awarded. Finley, supra.
In Finley, this court affirmed an award of $5,000 to a spouse who proved a definite loss of only one element, sexual relations, and a potential loss of material services. In Higley, supra, the appellate court reversed the jury's denial of an award for loss of consortium. There, the husband testified that he had become a "couch potato" because his injured wife went to bed so early. Also, in the three-year period following her accident, the couple had sexual relations only three times. The court found that the minimum award for the husband was $6,000. In Smith v. Winn-Dixie Louisiana, Inc., 574 So.2d 514 (La. App. 3rd Cir.1991), an award of $25,000 was reduced to $10,000. There, the retired husband of the injured wife had to assume many household duties, drive his wife to medical appointments and was forced to forego his wife's company in gardening and other activities which they had previously enjoyed doing together. In Sexton v. Louisiana Vacuum Services, Inc., 506 So.2d 780 (La.App. 1st Cir.1987), the court affirmed an award of $10,000 to a wife who nursed her husband after his post-accident hospitalization. Their social life was drastically reduced, and their marital relationship ceased because of the husband's constant pain.
*880 In Spangler v. North Star Drilling Company, 552 So.2d 673 (La.App.2d Cir. 1989), the court reduced a consortium award of $75,000 to $25,000 for a wife whose husband was irritable and frustrated because of his injury. Their general relationship was greatly strained, and their sexual relationship had diminished. In American Motorist Insurance Company v. American Rent-All, Inc., 566 So.2d 121 (La.App. 5th Cir.1990), affirmed in part, reversed in part 579 So.2d 429 (La.1991), a trial court originally awarded the husband $55,000 for loss of consortium. The appellate court reduced this award to $10,000, but the Supreme Court raised the judgment to $25,000. There, the wife's injuries required the husband to perform the housework and care for their minor child. Their marital life had suffered greatly because of the wife's injury and her ensuing pain and depression. The couple had been forced to forego previously enjoyed recreational and social activities.
In the present case, Mr. and Mrs. Clark testified that as a result of his injuries they were no longer able to participate in many of the activities they had previously enjoyed, such as dancing and traveling. (Although they had undertaken a trip to California with their daughter and neighbors, this was apparently an exception and not the rule.) Mrs. Clark testified that their marital relations had been adversely affected by Mr. Clark's injuries. Also, following each of Mr. Clark's three surgeries, she had helped care for him. Dr. Paul Ware, the psychiatrist whose office provided counseling for Mr. Clark, described the plaintiffs' marriage as "very stable." However, he testified that the dynamics of their relationship had previously been based upon Mr. Clark's frequent absences from home on business and that his constant presence at home following the accident had resulted in increased stress.
A judge or jury has much discretion in assessing damages in cases of offenses and quasi-offenses. LSA-C.C. Art. 2324.1. After finding that the lower court abused its discretion, the appellate court may raise (or lower) an award of damages to the lowest (or highest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Based upon the foregoing, we find that Mrs. Clark has established a loss of consortium claim. Although she and her husband are now able to spend more time together, it is not of the same quality as before. They now forego certain recreational and social activities which they had previously enjoyed. Also, their marital relationship has suffered. Mrs. Clark's situation is more serious than those presented in the cases in which damages were denied. However, her claims do not appear to be as serious as those in the Spangler and American Motorist cases. We therefore find that the lowest award the trial court could have awarded to Mrs. Clark was $10,000. However, her award will be reduced by the degree of fault attributable to Mr. Clark. See Thomas v. Hartford Insurance Company, 540 So.2d 1068 (La.App. 1st Cir.1989), writ denied 542 So.2d 516 (La.1989).
The denial of Mrs. Clark's claims is reversed, and judgment will be rendered accordingly.

PARTIAL SETTLEMENT AGREEMENT
The plaintiffs argue that the trial court erred in its interpretation of the partial settlement agreement which they entered into with Aetna, Ark-La-Tex and its insurers. They also contend that the trial court erred in allowing the taking of parol evidence as to the intent of the parties and their attorneys when the agreement was confected.
The trial court ruled, and Ark-La-Tex contends, that Ark-La-Tex was liable only for 54 percent of the judgment, its virile share. However, the plaintiffs contend that they are entitled to collect from Ark-La-Tex the 78 percent of the damages assessed against both Ark-La-Tex and Jonesboro Ford as solidary defendants. The plaintiffs further claim the right to a "double" recovery of the 24 percent of the judgment attributable to Jonesboro Ford under the terms of Paragraph 13 of the *881 partial settlement agreement, infra, which purportedly transferred to the plaintiffs Ark-La-Tex's rights to contribution under its cross-claim against Jonesboro Ford. Thus, under the plaintiffs' interpretation of the agreement, they are entitled to recover 102 percent of the judgment (54 percent and 24 percent from Ark-La-Tex, plus another 24 percent from Jonesboro Ford).
A compromise is an agreement between two or more persons to adjust their differences by mutual consent to prevent or end a lawsuit. The compromise must be reduced to writing or recited in open court. LSA-C.C. Art. 3071. It regulates only the differences which appear clearly to be comprehended in it by the intention of the parties. LSA-C.C. Art. 3073. A compromise cannot be attacked on account of any error in law or for lesion, but an error in calculation may be corrected. LSA-C.C. Art. 3078. However, it may be rescinded for error in the person or on the matter in dispute, fraud or violence. LSA-C.C. Art. 3079. Generally, the meaning and intent of the parties must be sought within the four corners of the document, and parol evidence cannot contradict it. LSA-C.C. Art. 1848. However, an exception to this rule exists when there is a dispute between the parties as to exactly what matters were intended to be settled by the compromise agreement. Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir. 1983); Condoll v. Johns-Manville Sale Corp., 448 So.2d 169 (La.App. 5th Cir.1984).
The agreement states in paragraph 2 that it is "a high-low agreement." In relevant part, the agreement also provides:
3.
Plaintiffs and intervenor agree that should there be any judgment of the jury which exceeds as to Ark-La-Tex Auto Auction, Inc. the total insurance of Aetna Casualty & Surety's $500,000 principal and United States Fire Insurance Company's $350,000 principal that the obligation and liability of Ark-La-Tex Auto Auction, Inc. and its insurers shall not exceed the sum of $850,000 and legal interest on $850,000 only (no interest on any judgment amount above $850,000) and that the payment to plaintiffs and to intervenor of said sum of $850,000 and legal interest on the $850,000 until paid shall satisfy any judgment in principal of $850,000 or larger against Ark-La-Tex Auto Auction, Inc. and its insurers and all judgments shall be canceled as to Ark-La-Tex Auto Auction, Inc. and said insurers. The purpose of this high award agreement is to provide a high cap on any award involving those defendants equal to the insurance coverage provided Ark-La-Tex Auto Auction, Inc. and to release Ark-La-Tex Auto Auction, Inc. from any uninsured liability and give it a full release of all claims of plaintiffs and of intervenor. The legal interest, referred to herein, on any sums will be paid from the date of judicial demand until paid.
. . . .
5.
Ark-La-Tex Auto Auction, Inc., Aetna Casualty & Surety Company, and United States Fire Insurance Company, agree to a low guaranteed payment to plaintiffs and to intervenor so that if the judgment by the jury results in the plaintiffs and intervenor obtaining any award of principal and interest which is less than $240,000 on the date of the jury decision, then the agreeing defendants herein shall pay to plaintiffs and intervenor for full release of all claims, the sum of $240,000. The purpose of this agreement is that plaintiffs and intervenor shall recover in any event the sum of $240,000 (for example even if the jury finds 100% fault of plaintiff Clark).
. . . .
11.
The parties waive their right to seek an appeal or judgment notwithstanding the verdict or any other modification of the jury decision or other alteration modification, reversal or change in the judgment of the jury as to each other and with [sic] only answer appeals or district court actions of the non agreeing defendants *882 and will not execute the judgment to alter the jury high-low agreement above.
. . . .
13.
After the jury decision, the rights of Ark-La-Tex Auto Auction, Inc., The Aetna Casualty and Surety Co., and United States Fire Insurance Company of any cross claim against Jonesboro Ford and its insurer are waived in favor of the plaintiffs, Roger and Jeanette Clark and their attorney, John T. Bennett.
(Emphasis ours.)
As previously noted, the trial court held a hearing at which testimony was given by the attorneys and some of the parties as to their intent in making the high-low agreement. Thereafter, the trial court ruled that the jury verdict determined the proportionate liability of the parties and primed any provisions to the contrary in the agreement. The trial court further ruled that nothing in the settlement required a double recovery by the plaintiffs of the portion of the judgment attributable to Jonesboro Ford.
The agreement standing alone is far from clear. In the face of such ambiguity, the trial court was justified in allowing the introduction of evidence to clarify the agreement. A preponderance of the evidence establishes that the parties thought that Paragraph 13 only had effect if the judgment was below $240,000 or if, as to Ark-La-Tex, it was above $850,000. If the judgment, as to Ark-La-Tex, was more than $850,000, then Ark-La-Tex was not to pursue a cross-claim and the plaintiffs could still proceed against Jonesboro Ford for payment of any amount Jonesboro Ford might have owed over and above the $850,000 liability of Ark-La-Tex. The same was true if the jury verdict was less than $240,000. Even if the jury verdict was $240,000 or less, the liability of Ark-La-Tex was still fixed at $240,000, and the plaintiffs could seek to collect from Jonesboro Ford any amount it owed under the jury verdict. The parties never intended that if the judgment, as to Ark-La-Tex, was in the middle range, the plaintiffs could collect Jonesboro Ford's portion twice, i.e., from Ark-La-Tex, as well as from Jonesboro Ford. Under those circumstances, Paragraph 13 simply was not intended to have any effect.
Consequently, we find that the trial court was correct in holding that "double recovery" was not mandated by the terms of the partial settlement agreement. Thus, we affirm the trial court judgment on the motions for declaratory judgment.

CONCLUSION
We affirm the trial court judgment as to liability and the percentages of comparative fault assessed by the jury. The denial of Jeanette Clark's claim for loss of consortium is reversed, and judgment is accordingly granted in her favor in the amount of $10,000, less the 22 percent of fault attributable to her husband, with legal interest thereon, from date of judicial demand until paid.
The trial court judgment on the motions for declaratory judgment is also affirmed.
Costs of this appeal are assessed jointly among the parties.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.