CARGILL, INCORPORATED (DELAWARE) AND CARGILL INTERNATIONAL SA (SWITZERLAND)

VERSUS

SYNGENTA SEEDS, INC. (DELAWARE)

NO. 21-CA-681

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 67,61, DIVISION "A"
HONORABLE MADELINE JASMINE, JUDGE PRESIDING

December 07, 2022

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Marc E. Johnson

**MOTION TO DISMISS APPEAL DENIED; JUDGMENT GRANTING
PARTIAL SUMMARY JUDGMENT REVERSED; REMANDED**
   **JGG**
   **FHW**
   **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

*Alexis Barteet*
Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CARGILL, INCORPORATED AND CARGILL INTERNATIONAL SA
George J. Nalley, Jr.
Michael H. Rubin
Kathryn N. Hibbard
X. Kevin Zhao
Faris Rashid
Aaron P. Knoll

COUNSEL FOR DEFENDANT/APPELLEE,
SYNGENTA AG, SYNGENTA CROP PROTECTION AG, SYNGENTA
CORPORATION, SYNGENTA SEEDS, LLC, AND SYNGENTA CROP
PROTECTION, LLC
Michael D. Jones
Edwin John U
David Horowitz
Mark C. Surprenant
Ronald J. Sholes
Raymond P. Ward
Diana C. Surprenant

**GRAVOIS, J.**

Plaintiffs/appellants Cargill, Incorporated and Cargill International SA (collectively "Cargill") appeal the trial court's grant of partial summary judgment in favor of defendants/appellees Syngenta AG, Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Seeds, LLC (formerly known as Syngenta Seeds, Inc.), and Syngenta Crop Protection, LLC (collectively "Syngenta") which limited the amount of lost profits damages Cargill may present to the jury at trial on the merits in this matter concerning alleged tortious conduct by Syngenta that Cargill argues interrupted its international corn trade with China.

After the lodging of the appeal in this Court, Syngenta filed a motion to dismiss the appeal, arguing that the trial court abused its discretion in finding no just reason for delay and certifying the partial summary judgment as immediately appealable under La. C.C.P. art. 1915(B).  For the following reasons, we deny the motion to dismiss, finding that the trial court did not abuse its discretion in finding the partial summary judgment immediately appealable.

On appeal, Cargill argues that Louisiana law allows a plaintiff to recover damages based on predictions of a "reasonably probable" government action, which in this case was Cargill's claim that China would have imported corn in volumes over the Tariff Rate Quota ("TRQ") of 7.2 million metric tons per year.[1] As such, Cargill argues that the trial court erred in finding that it must prove lost profits damages by a "reasonable certainty."  Second, Cargill argues that the trial court erred in granting Syngenta partial summary judgment because Cargill presented evidence creating genuine issues of material fact about China's projected

---

[1] The Tariff Rate Quota in this case as explained in the briefs and record is a quota, resulting from world trade agreements through the World Trade Organization, that allows countries to impose higher tariffs on imports above a particular level, in this case, China's imports of corn over 7.2 million metric tons per year.  According to evidence in the record, China's Tariff Rate Quota levied a 1% tariff on imports of corn up to 7.2 million metric tons per year, and authorized a 65% tariff on imports of corn exceeding that amount.

corn imports that cannot be properly resolved on summary judgment, because such a resolution necessarily requires the weighing of competing evidence and the evaluation of experts' testimonies, neither of which are appropriate on summary judgment.

For the following reasons, we reverse the trial court's grant of the partial summary judgment. Although we find that the trial court applied the correct burden of proof to Cargill's claims, we find that the trial court erred in granting the partial summary judgment, impermissibly weighing evidence and evaluating the credibility of witnesses. The matter is remanded to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Cargill is a major United States grain exporter who purchases harvested corn from U.S. farms and transports it down the Mississippi River to its facilities in Reserve and Westwego, Louisiana, where it is loaded on to vessels and transported around the world to international purchasers. The purchased corn is "commoditized," that is, the corn purchased from multiple farms and locations is mixed with others in storage elevators and in ships prior to export.

Syngenta is a Swiss biotechnology company and its American subsidiaries who, pertinent to this case, developed two genetically modified ("GM") corn seeds, one called "Viptera," containing the genetically modified trait called MIR 162, and one called "Duracade," containing the genetically modified trait called Event 5307. According to Cargill's suit, Syngenta released the two GM seeds, Viptera in 2011 and Duracade in 2014, for sale and planting in the U.S., knowing that neither trait was approved for import by China, who was allegedly a key export market for U.S. corn and who was known to have "zero tolerance" for

allowing the import of unapproved genetically modified agricultural commodities and products.[2]

Cargill's suit alleges that Syngenta nonetheless released the Viptera corn seeds in 2011 and Duracade corn seeds in 2014 for planting in the United States, allegedly in contravention of industry standards for the responsible release of new biotechnology, as well as assurances they would not do so, knowing that corn harvested from those seeds would "contaminate" the entire United States corn supply and affect sales to other countries, particularly China, where the two GM traits were not yet approved.[3]  This alleged disruption in trade occurred by November of 2013, as China began rejecting Cargill's shipments of U.S. corn after testing revealed the presence of Syngenta's first unapproved GM trait (the Viptera corn) in the shipments.  The disruption continued as the Duracade corn was released in the fall of 2014, which China had likewise not approved for import at that time.

Cargill filed suit against Syngenta in St. John the Baptist Parish in 2014, seeking to find Syngenta liable for the interruption and disruption of Cargill's corn trade with China resulting from Syngenta's release of Viptera and Duracade in the United States prior to its approval by China.  Cargill seeks various categories of damages from Syngenta, ranging from compensation for the rejection of its corn shipments by Chinese authorities, substantial operational delays at Cargill's Louisiana export facilities, deferred or cancelled corn contracts with Chinese buyers, and lost profits during the years China did not purchase U.S. corn from

---

[2] The record indicates that the two seeds were approved by United States agricultural authorities for sale and planting in the U.S. prior to Syngenta's releases of them in the U.S.

[3] "Contamination" occurs because the harvested GM corn is mixed in storage and transportation ("commoditized") with other harvested corn not containing the unapproved GM traits.

Cargill, prior to China's eventual approval of the two genetically modified corn seeds.[4]

Pertinent to this appeal, on March 16, 2018, Syngenta filed a Motion for Summary Judgment, seeking dismissal of all of Cargill's claims for liability on various grounds, and also seeking in the alternative to dismiss or limit Cargill's various damage claims. The motion was referred to the Special Master whom the trial court had appointed in December of 2016 to assist with coordination and resolution of all pretrial motions.[5] Cargill opposed the motion. The Special Master released a comprehensive report on December 31, 2018, which made recommendations for ruling on each of Syngenta's claims for summary judgment. Pertinent to this appeal, the Special Master recommended denying Syngenta's motion to dismiss Cargill's claims for lost profits, ruling that Cargill had presented evidence to demonstrate genuine issues of material fact regarding these claims. The Special Master found that to rule on the particular lost profit claim would require him to weigh the evidence produced by both sides and to determine the credibility of experts, a function that was within the jury's province, but which was inappropriate for him to perform on summary judgment, specifically finding in conclusion: "At this stage, it is not incumbent upon the Special Master to necessarily make a credibility determination regarding which expert is correct; that is left to the trier-of-fact."

The trial court, however, disagreed with the Special Master's recommendation in part. Finding merit to Syngenta's argument that a lost profits damage claim based upon Cargill's experts' predictions that China would have

---

[4] Filings in the appellate record indicate that China eventually approved corn grown from Viptera for import in December of 2014, and approved corn grown from Duracade for import in July of 2017.

[5] Bernard L. Charbonnet, Jr. was appointed by the trial court as Special Master in this case.

imported more corn than the TRQ involved predicting the likelihood of China "altering longstanding policies" and changing its law regarding the TRQ, the court found this aspect of the lost profits claim to be too remote and speculative to be proven with "reasonable certainty." The trial court, therefore, granted Syngenta's motion for summary judgment in part, rendering a partial summary judgment in favor of Syngenta and thus limiting the amount of lost profits damages Cargill could present to a jury:

> … to the extent that [Cargill's] damages are premised on corn imports by China above 7.2 million metric tons per year; Cargill's lost profits damages are limited to those premised on imports by China at or below 7.2 million metric tons per year. It is further ORDERED, ADJUDGED, and DECREED that Syngenta's motion for summary judgment on Cargill's lost-profits damages is **DENIED** in all other respects.

On appeal, Cargill argues that the trial court erred in granting partial summary judgment, first by imposing the wrong burden of proof for determining lost profits damages, and next by impermissibly weighing the evidence produced by both parties and determining the credibility of the expert witnesses, which is the province of the jury and inappropriate on summary judgment.

## <u>MOTION TO DISMISS THE APPEAL</u>

Syngenta filed a Motion to Dismiss the appeal in this Court following the lodging of the appeal. Therein, Syngenta advanced arguments that it also made in the trial court following Cargill's motion to designate the judgment as final and immediately appealable. Syngenta argued that the damages issue as a whole could be mooted by further events in the trial court, such as: (1) a finding in favor of Syngenta regarding liability; (2) the possibility that the appellate court might need to consider the same issues again; and (3) that Cargill or Syngenta might appeal any final judgment depending on the final outcome of the case following trial.

Cargill counters that Louisiana appellate courts have routinely held that certification of immediate appealability of a partial summary judgment on the issue

of damages is appropriate, when a trial court has either eliminated a category of damages or has capped damages, citing, among many others, *Sicily Island Holdings, LLC v. U.S. Aviation Underwriters, Inc.*, 19-703 (La. App. 3 Cir. 5/6/20), 297 So.3d 935, 939, which indicates that in a previous writ disposition, the Third Circuit entered judgment certifying various partial summary judgments pertaining to certain categories of damages as final and immediately appealable and remanded the matter for the filing of a motion for an appeal. Cargill also argues that the lost profits issue is discrete, not intertwined with Cargill's other claims, as argued by Syngenta, and thus is not dependent on the resolution of the remaining issues. Further, Cargill argues that given the significance of their lost profits claim, resolution of the scope of this claim now, as opposed to in an appeal after a full trial, promotes judicial efficiency and fairness to the litigants.

"To assist the appellate court in its review of designated final judgments, the trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay. If such reasons are given, the appellate court should review the certification by applying the abuse of discretion standard." *Bell v. Steckler*, 19-170 (La. App. 5 Cir. 12/4/19), 285 So.3d 561, 568, *writ denied*, 20-0028 (La. 2/26/20), 347 So.3d 877, citing *R.J. Messinger, Inc. v. Rosenblum*, 04-1664 (La. 3/2/05), 894 So.2d 1113, 1122. The *Bell* court recognized that historically, our courts have had a policy against multiple appeals and piecemeal litigation. La. C.C.P. art. 1915(B)[6] attempts to strike a balance between the

---

[6] Louisiana Code of Civil Procedure article 1915(B) provides:

B.(1)   When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

(2)   In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the

undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. *Id.* The *Bell* court found:

> … In conducting our review of the trial court's designation, we consider the "overriding inquiry" of "whether there is no just reason for delay," as well as the other nonexclusive criteria trial courts should use in making the determination of whether certification is appropriate, including the relationship between the adjudicated and the unadjudicated claims; the possibility the need for review might or might not be mooted by future developments in the trial court; the possibility the reviewing court might be obliged to consider the same issue a second time; and miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
>
> 285 So.3d at 568, citing *R.J. Messinger, Inc. v. Rosenblum*, *supra*, 894 So.2d at 1122-23.

In its Amended and Restated Judgment issued on December 17, 2020, the trial court provided reasons for certifying the partial judgment as immediately appealable under La. C.C.P. art. 1915(B). Accordingly, we review the certification under the abuse of discretion standard.

The trial court acknowledged the arguments and possibilities raised by Syngenta, noted above. The trial court nonetheless recognized that the issue of damages would be the "most important issue" in this case, with lost profits being a major part of the damages calculation.[7] The trial court recognized that Cargill's other lost profits theories remained before the court, and that there might be confusion in exactly what evidence could be introduced at trial because the grant of partial summary judgment precluded Cargill's experts from testifying at trial as to the totality of their opinions regarding lost profits damages. Accordingly, the trial court, while mindful of the policy against piecemeal appeals, and the length of time this case has been pending, certified the partial summary judgment as immediately

---

judgment adjudicating all the claims and the rights and liabilities of all the parties.

[7] Cargill argues on appeal that the trial court's partial summary judgment, if it stands, dismisses over $200 million of their damages claim, out of over a total of $430 million in damages Cargill is claiming in this suit.

appealable, finding no just reason to delay an appellate review of the partial summary judgment.

After review of the trial court's reasons for certification, we find no abuse of the trial court's discretion in finding no just reason for delaying appellate review of the partial summary judgment and so certifying the judgment as immediately appealable. The factors the trial court articulated in its reasons, the importance of the damages issue, combined with the confusion the ruling might impose over introduction of evidence at trial, provide an ample legal basis for conducting an immediate appeal of the partial summary judgment. Moreover, we disagree with Syngenta's assertion, made in brief and in oral argument, that a Cargill proffer at trial of the currently excluded evidence would suffice for this Court to determine lost profits damages, at an appeal after the full jury trial, in the event this Court declined to consider the instant appeal at this juncture. The Motion to Dismiss the appeal is thus denied.

## SUMMARY JUDGMENT

Appellate courts review a judgment granting a motion for summary judgment on a *de novo* basis. *Richthofen v. Medina*, 14-294 (La. App. 5 Cir. 10/29/14), 164 So.3d 231, 234, *writ denied*, 14-2514 (La. 3/13/15), 161 So.3d 639, citing *Gutierrez v. State Farm Fire & Cas. Ins. Co*., 13-341 (La. App. 5 Cir. 10/30/13), 128 So.3d 509, 511. Thus, this Court uses the same criteria as the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id*. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

Under La. C.C.P. art. 966, the initial burden is on the mover to show that no

genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The nonmoving party must then produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. *Pouncy v. Winn-Dixie La., Inc.*, 15-189 (La. App. 5 Cir. 10/28/15), 178 So.3d 603, 605, citing La. C.C.P. art. 966(C)(2), and *Babino v. Jefferson Transit*, 12-468 (La. App. 5 Cir. 2/21/13), 110 So.3d 1123, 1125.

A *de novo* review or an appeal *de novo* is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. *Sarasino v. State through Department of Public Safety and Corrections*, 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 928, citing *Wooley v. Lucksinger*, 06-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 335. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Muller v. Carrier Corp.*, 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885, citing *Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc.*, 527 So.2d 350 (La. App. 5 Cir. 1988).

In determining whether an issue is genuine for purposes of a summary judgment, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. *Boros v. Lobell*, 15-55 (La. App. 5 Cir. 9/23/15), 176 So.3d 689, 693, citing *Read v. Willwoods Community*, 11-222 (La. App. 5 Cir. 2/14/12), 88 So.3d 534, 537-38, which cited *Coto v. J. Ray McDermott*, 99-1866 (La. App. 4 Cir. 10/25/00), 772 So.2d 828; *Oakley v. Thebault*, 96-0937

(La. App. 4 Cir. 11/13/96), 684 So.2d 488, 490; and *Helwick v. Montgomery Ventures Ltd.*, 95-0765 (La. App. 4 Cir. 12/14/95), 665 So.2d 1303, 1306.

## ANALYSIS

### *Burden of Proof*

On appeal, Cargill first argues that Louisiana law allows a plaintiff to recover damages based on predictions of a "reasonably probable" government action. As such, Cargill argues that the trial court erred in finding that it must prove by a "reasonable certainty," rather than by a "reasonable probability," that China would have imported volumes of corn in excess of the TRQ.

As a general rule, damages for loss of profits may not be based on speculation and conjecture; however, such damages need be proven only within reasonable certainty. *Brecheen v. News Grp., L.P.*, 11-1173 (La. App. 5 Cir. 12/11/12), 105 So.3d 1011, 1029-30, *writ denied*, 13-0263 (La. 3/15/13), 109 So.3d 384. Broad latitude is given in proving lost profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required. *Id.* (Internal citations omitted.)

Loss profits resulting from an offense or quasi offense must be proven with a reasonable certainty, and damages which are purely conjectural will not be allowed. The burden of proving the existence of damages and the causal connection between them and the delictual act rests with the plaintiff. Such proof must be shown by a preponderance of the evidence. A mere possibility is not sufficient. *Teen Town Prods., L.L.C. v. Scurlock*, 15-454 (La. App. 5 Cir. 12/23/15), 182 So.3d 1208, 1217, citing *Meyers v. Imperial Casualty Indem. Co.*, 451 So.2d 649, 658 (La. App. 3 Cir. 1984), which cited *Coco v. Richland General Contractors, Inc.*, 411 So.2d 1260 (La. 1982), *writ denied*, 413 So.2d 909 (La. 1982).

"Our courts, while recognizing that lost profits may not always be susceptible of proof to a mathematical certainty, have held that lost profits must nonetheless be proven with reasonable certainty, that is, by a preponderance of the evidence. An award of damages for lost profits cannot be based on either conjecture nor speculation." *Louisiana Smoked Products, Inc. v. Savoie Sausage and Food Products, Inc.*, 95-932 (La. App. 3 Cir. 3/27/96), 673 So.2d 248, 253, citing *Graham v. Edwards*, 614 So.2d 811 (La. App. 2 Cir. 1993), *writ denied*, 619 So.2d 547 (La. 1993), and *Clark v. Ark-La-Tex Auction, Inc.*, 593 So.2d 870 (La. App. 2 Cir. 1992), *writ denied,* 596 So.2d 210 (La. 1992). Reasonable certainty is a preponderance of the evidence. *Teen Town Prods., L.L.C. v. Scurlock, supra.*[8]

When the trial court stated that Cargill must prove with reasonable certainty that China would have acted in a certain way, the trial court was using the same burden of proof used by the Special Master in his report and the same burden of proof cited in the above jurisprudence.

In light of the above jurisprudence, we find that the trial court, as well as the Special Master, stated the correct burden of proof to determine lost profits. In order to prevail on this damage claim, if Syngenta is found liable to Cargill, Cargill must show by a preponderance of the evidence, which is more likely than not, and which is also a "reasonable certainty," that China would have imported corn in excess of the TRQ for the affected years, absent Syngenta's actions. This assignment of error is without merit.

***Genuine Issues of Material Fact***

Second, Cargill argues that it presented evidence creating genuine issues of material fact about China's projected corn imports that cannot be properly resolved

---

[8] The term "reasonable probability" appears most often in criminal case law, as well as in expropriation cases and cases seeking injunctive relief. It is not a term commonly used in case law to discuss the entitlement to and calculation of lost profits damages.

on summary judgment, because such a resolution necessarily requires the weighing of competing evidence and the evaluation of experts' testimonies, neither of which are appropriate on summary judgment.

In its motion for summary judgment, Syngenta's arguments against Cargill's lost profits claims were: 1) that Cargill lacked a sufficient track record of exporting corn to China; 2) the projections of Chinese demand for U.S. corn (by experts Dr. Dermot Hayes and Dr. William Wilson) that Cargill relied upon were inaccurate;[9] 3) Cargill's damages presume that China would change its laws to modify a tariff rate quota (TRQ) for corn imports that, pursuant to an agreement with the World Trade Organization, gives China the discretion to impose a higher tariff on annual corn imports above 7.2 million metric tons; 4) Cargill did not consider factors besides Syngenta's actions that might have affected China's corn imports; and 5) Cargill sought damages for too long a time period. Syngenta's arguments were made considering the affidavits of Cargill's two expert agricultural economists, and other evidence furnished by Cargill, such as answers to interrogatories, projections made by the United States Department of Agriculture, as well as projections from other sources furnished by Cargill, and depositions by other witnesses as noted in Syngenta's motion for summary judgment.[10]

---

[9] On March 13, 2018, three days before it filed its Motion for Summary Judgment, Syngenta filed motions to exclude the expert opinions and testimonies of Dr. Dermot Hayes and Dr. William Wilson. The matters were heard by the Special Master on June 14, 2018. By report issued on August 13, 2018, the Special Master denied Syngenta's motion regarding Dr. William Wilson. By report issued on August 13, 2018, the Special Master granted in part Syngenta's motion regarding Dr. Dermot Hayes, excluding his opinion as to whether China would have mimicked the importing patterns of South Korea and Japan, but in all other aspects denying the motion to exclude his opinion and testimony, including on the TRQ question. It appears that the reports were reissued on December 31, 2018.

Syngenta also filed a motion to strike portions of the reissued reports of Drs. Hayes and Wilson in response to Dr. Thurman's supplemental report. The Special Master granted in part and denied in part in a report dated December 20, 2018.

[10] A list of the evidence in the record is found in Plaintiffs' Notice of Designation filed on January 4, 2021, as well as in Defendants' Cross-Designation of the record, filed on January 7, 2021.

The trial court granted partial summary judgment on the third item in Syngenta's list, holding that Cargill's lost profits claim was limited to "those premised on imports by China at or below 7.2 million metric tons per year."

As previously noted, the Tariff Rate Quota in this case is explained in the briefs and record is a quota, resulting from world trade agreements through the World Trade Organization, that allows countries to impose higher tariffs on imports above a particular level, in this case, China's imports of corn over 7.2 million metric tons per year.[11]  According to evidence in the record, China's Tariff Rate Quota authorized a 65% tax on imports of corn exceeding 7.2 million metric tons per year.

The Special Master recommended that Syngenta's motion for summary judgment be denied regarding Cargill's claims for lost profits.  The Special Master addressed each of Syngenta's claims separately.  The Special Master's report stated, in pertinent part:

> **J.  Are Cargill's lost profit claims too speculative under Louisiana law[?]**
>
> The general rule is that while damages for loss of profits may not be based on speculation and conjecture, such damages need be proven only within a reasonable certainty. *Lavigne v. J. Hofert Co.*, 431 So.2d 74, 76 (La. App. 1 Cir. 4/5/83).  Lost profits do not need to be proven by mathematical certainly; however, they must be proven with reasonable certainty, *i.e.* preponderance of the evidence standard. *Louisiana Smoked Products, Inc. v. Savoie Sausage and Food Products, Inc.*, 95-932, p. 8 (La. App. 3 Cir. 3/27/96); 673 So.2d 248, 253.
>
> "Broad latitude is given in the proving of lost profits as damages." *Lavigne* at 76.  "The trier of fact must be afforded much discretion in the determination of such damages[.]" *Clark v. Ark-La-Tex Auction, Inc.*, 593 So.2d 870, 878-79 (La. App. 2 Cir. 1/22/92).
>
> * * *
>
> 3.  Cargill relies on projections that China would have changed its law[.]

---

[11] A TRQ applies not only to corn, but to many agricultural commodities, as various experts explained in reports.

Syngenta argues that Dr. Dermot Hayes and Dr. William Wilson impermissibly speculate that China would have changed its tariff rate quota ("TRQ") laws in excess of the 7.2 million metric ton per year to allow an unprecedented amount of imports of corn.

Cargill alludes to various evidence that they intend to produce to illustrate that China unilateral[ly] has the authority to change the TRQ without permission from any other governing or administrative body and that if it is China's best interest to do so, it would.

As discussed in Dr. Dermot Hayes, Motion to Exclude, Cargill has presented evidence to demonstrate a genuine issue of material fact. Ultimately, whether Cargill can prove their position to the trier-of-fact is a question that is not presented in this summary judgment.

Cargill argues that it presented evidence creating genuine issues of material fact about China's projected corn imports that cannot be properly resolved on summary judgment, because such a resolution necessarily requires the weighing of competing evidence and the evaluation of experts' testimonies, neither of which are appropriate on summary judgment.

In its motion for summary judgment, Syngenta argued that this particular piece of Cargill's claim for lost profits was inherently speculative because to prevail, Cargill claims and would need to prove that China would have changed its laws, specifically the Tariff Rate Quota, to allow "unprecedented" amounts of imported corn. Syngenta supported its motion with expert witness reports of Dr. Walter Thurman and Philip Shull and other exhibits. Cargill opposed Syngenta's motion for summary judgment with evidence consisting of the reports of Dr. Dermot Hayes and Dr. William Wilson, two Ph.D. agricultural economists, as previously noted, as well as hundreds of other exhibits. Cargill's experts both offered opinions that China would have imported corn in volumes over the TRQ were it not for Syngenta's actions. The experts' qualifications to render such opinions were fully explored in the motions to exclude referenced by the Special Master, and as noted in footnote 9 of this opinion. The different evidence offered by the parties raises a question of material fact as to whether to import corn in excess of the TRQ, China would need to "change its laws," or merely unilaterally

decide to exercise discretion that it may without legislative action.[12] As noted above, courts recognize that lost profits damages are inherently speculative in nature. The pertinent question is, are they *too* speculative, given the evidence in the record at this juncture, to be evaluated by a jury. After reviewing the entire record on appeal and the pertinent evidence, we conclude they are not too speculative to be evaluated by a jury. Ruling on summary judgment on this issue requires weighing of much evidence and the evaluation of witnesses' opinions and credibility, which are not allowed on summary judgment.

Syngenta cites several cases where lost profits damages were not allowed. For example, *Quality Assur. Lab'y v. Biomed Design, Inc.*, CIV. A., No. 84-735, 1986 WL 14780, at *1 (E.D. La. Dec. 19, 1986), cited by Syngenta, concerned a bench trial where plaintiffs failed to bear their burden of proof *at trial* regarding lost profits. Accordingly, it is not applicable to this summary judgment case. Further, *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 Fed. Appx. 191, 200-01 (5th Cir. 2018), also cited by Syngenta, concerned in part the plaintiff's damage claim for lost business opportunity. The plaintiff was in preliminary negotiations with a potential partner to develop a tract of land for residential use when the defendant's development was found to be producing bacterial run-off that contaminated a pond on the plaintiff's property, after which negotiations for development allegedly ceased. The trial court granted summary judgment after finding that the plaintiffs produced no significant evidence that the

---

[12] There is little information in this record regarding the mechanics of Chinese legislative process, or even if such process exists. Philip Shull, in his expert report for Syngenta, quoted a USDA research economist who recognized that "[t]he door to the Chinese market regularly swings open and shut with no change in written laws or regulations." He also stated that "Government officials have maximum discretion, flexibility, and control when implementing rules and regulations, including trade and biotechnology regulations, to ensure that political goals are satisfied." These statements in Syngenta's expert report, considered along with Cargill's evidence, raise questions of material fact that are not resolved in this record, whether Chinese laws would have indeed needed to be changed in order to import corn over the TRQ, and how easy or difficult that change might be to accomplish.

proposed project would have gone forward but for the defendant's contamination of the pond ("For example, the parties had not yet agreed upon the value of the property to be contributed by Cedar Lodge. Also, no contribution agreement or letter of intent had been signed, no joint venture had been formed, and the application for HUD financing had not been made. Because the negotiations could have fallen through at any of these (or other) stages, damages for the loss of this business opportunity are based upon speculation and are not recoverable."). *Id*. at 200-01. The appellate court affirmed summary judgment in favor of the defendant as to the plaintiff's claim for lost business opportunity damages, finding that "the likelihood that the proposed business deal would ultimately come together was speculative, making an award of lost business opportunity damages improper." *Id.* at 200.

In this case, however, we find that the evidence provided by both parties, as noted and described above, shows that genuine issues of material fact remain regarding whether China would have opted to import corn in excess of the TRQ, and also whether such "opting" would have involved changing laws or merely exercising existing discretion. Reviewing this voluminous record as a whole, we find that granting partial summary judgment on this issue required the trial court to weigh competing evidence and evaluate the opinions and credibility of experts, which is not appropriate when considering motions for summary judgment. The trial court's ruling also denies Cargill the "broad latitude" afforded to litigants attempting to prove lost profits damages. *Brecheen v. News Grp., L.P.*, *supra*. We accordingly reverse the trial court's judgment which granted partial summary judgment in favor of Syngenta, limiting Cargill's lost profits damages claim, and remand the matter to the trial court for further proceedings.

## DECREE

For the foregoing reasons, Syngenta's Motion to Dismiss the appeal is denied, and the trial court's judgment which granted partial summary judgment in favor of Syngenta, limiting Cargill's lost profits damages claim, is reversed. The matter is remanded to the trial court for further proceedings.

**MOTION TO DISMISS APPEAL DENIED;
JUDGMENT GRANTING PARTIAL SUMMARY
JUDGMENT REVERSED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 7, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 21-CA-681

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE MADELINE JASMINE (DISTRICT JUDGE)
GEORGE J. NALLEY, JR. (APPELLANT)      MICHAEL H. RUBIN (APPELLANT)       DIANA C. SURPRENANT (APPELLEE)
MARK C. SURPRENANT (APPELLEE)          RAYMOND P. WARD (APPELLEE)

**MAILED**
ANDREW MINOR (APPELLANT)          RONALD J. SHOLES (APPELLEE)       KATHRYN N. HIBBARD  (APPELLANT)
ATTORNEY AT LAW                   ATTORNEY AT LAW                   CARGILL, INCORPORATED
2121 RIDGELAKE DRIVE              701 POYDRAS STREET                15407 MCGINTY ROAD WEST
SUITE 200                         SUITE 4500                        MS #24
METAIRIE, LA 70001               NEW ORLEANS, LA 70139             WAYZATA, MN 55391

AARON P. KNOLL  (APPELLANT)      DAVID HOROWITZ  (APPELLEE)        EDWIN JOHN U  (APPELLEE)
FARIS RASHID  (APPELLANT)        KIRKLAND & ELLIS LLP              LESLIE SMITH  (APPELLEE)
ROBERT GILBERTSON  (APPELLANT)   333 SOUTH HOPE STREET             MICHAEL D. JONES  (APPELLEE)
X. KEVIN ZHAO  (APPELLANT)       SUITE 2900                        PATRICK HANEY  (APPELLEE)
GREENE ESPEL PLLP                LOS ANGELES, CA 90071             RAGAN NARESH  (APPELLEE)
222 SOUTH NINTH STREET                                             SARAH SCHULTES  (APPELLEE)
SUITE 2200                                                         KIRKLAND & ELLIS LLP
MINNEAPOLIS, MN 55402                                              655 15TH STREET NORTHWEST
                                                                   SUITE 1200
                                                                   WASHINGTON, DC 20005